PEOPLE v KOLANEK

Docket No. 295125. Submitted November 2, 2010, at Detroit. Decided
January 11, 2011, at 9:00 a.m.

Alexander E. Kolanek was charged in the 52-3 District Court with
possession of marijuana. He moved for dismissal of the charge,
asserting the affirmative defense provided by the Michigan
Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.* After
an evidentiary hearing, the court, Julie A. Nicholson, J., con-
cluded that the defense was not available because defendant had
not shown that a physician had approved his medical use of
marijuana before defendant's arrest or that he had seriously
discussed the use of marijuana as a therapeutic benefit between
the date of the MMMA's enactment and defendant's arrest.
Defendant appealed in the Oakland Circuit Court, and the
circuit court, Edward Sosnick, J., concluded that the MMMA did
not require the physician's statement to be made at any
particular time and that the physician's statement made at the
evidentiary hearing, that defendant suffered from a debilitating
medical condition and would benefit medically from the use of
marijuana, was sufficient for the defense. The circuit court
reversed the district court's denial of defendant's motion to
dismiss. The prosecution appealed.

The Court of Appeals *held*:

1. A person facing possible prosecution for violating Michi-
gan's controlled substances laws may assert an affirmative
defense under MCL 333.26428(a) if a physician has stated that,
in the physician's professional opinion, the patient is likely to
receive therapeutic or palliative benefit from the medical use of
marijuana to treat or alleviate the patient's serious or debili-
tating medical condition or symptoms of the patient's serious or
debilitating medical condition. This language requires that the
physician's statement must be made before the person's arrest.

2. Because MCL 333.26428(a) created a new right that did
not exist before the enactment of the MMMA, the affirmative
defense it provides is effective only if the patient actively sought
physician approval on or after December 4, 2008. Defendant's
July 14, 2008, discussion with his physician did not take place at

a time the affirmative defense was available to defendant and thus was not effective as the physician's statement required by MCL 333.26428(a). The circuit court erred in concluding that the district court erroneously denied defendant's motion to dismiss.

Reversed and remanded for reinstatement of charges.

1. CONTROLLED SUBSTANCES — MEDICAL MARIJUANA — CRIMINAL DEFENSES — UNREGISTERED MEDICAL MARIJUANA USERS.

    A person facing possible prosecution for violating Michigan's controlled substances laws may assert an affirmative defense under MCL 333.26428(a) if a physician has stated that, in the physician's professional opinion, the patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; but the physician's statement must have been made before the person's arrest.

2. CONTROLLED SUBSTANCES — MEDICAL MARIJUANA — CRIMINAL DEFENSES — UNREGISTERED MEDICAL MARIJUANA USERS.

    The affirmative defense provided under the Michigan Medical Marihuana Act for a person whose physician has stated that medical use of marijuana would provide therapeutic or palliative benefits for the person is effective only if the patient actively sought physician approval on or after December 4, 2008 (MCL 333.26428[a]).

*Bill Schuette*, Attorney General, *B. Eric Restuccia*, Solicitor General, *Jessica R. Cooper*, Prosecuting Attorney, *John S. Pallas*, Chief, Appellate Division, and *Thomas R. Grden*, Assistant Prosecuting Attorney, for the people.

*Mark A. Ambrose* and *Shawn Patrick Smith* for defendant.

Before: MURPHY, C.J., and METER and SHAPIRO, JJ.

PER CURIAM. This case requires us to consider an issue of first impression involving the interpretation of

the Michigan Medical Marihuana[1] Act (MMMA), MCL 333.26421 *et seq.*, namely, when a physician must provide the statement required under MCL 333.26428(a)(1). Because we conclude that the statement must occur after the enactment of the MMMA, but prior to arrest, we reverse the circuit court's reversal of the district court's denial of defendant's motion to dismiss, and we remand to the circuit court for reinstatement of the charge against defendant and other necessary proceedings.

## I. BACKGROUND

On April 6, 2009, defendant was involved in an altercation that ultimately resulted in a search of defendant's vehicle and the seizure of eight marijuana cigarettes from the trunk of defendant's vehicle. On April 7, 2009, defendant was charged with possession of marijuana pursuant to MCL 333.7403(2)(d). Although defendant originally filed a motion to suppress evidence, he withdrew his motion on June 3, 2009, and instead asserted an affirmative defense under the MMMA, moving to dismiss on those grounds on June 10, 2009. On June 17, 2009, an evidentiary hearing was held on defendant's assertion of the defense.

Defendant admitted that he had eight marijuana cigarettes in his possession at the time of his arrest, but testified that he used them for relief from pain and nausea caused by his Lyme disease. Defendant offered the testimony of Dr. Ray Breitenbach, who had been treating defendant for nine years. Breitenbach testified that defendant has chronic Lyme disease, which causes symptoms such chronic severe pain, arthralgia, fatigue, and malaise. Breitenbach stated his opinion that defen-

---

[1] Although the statute spells it "marihuana," unless used in a direct quotation, we have spelled it throughout as "marijuana."

dant is "likely to receive therapeutic . . . benefit from the medical use of marijuana." This opinion was memorialized in a document signed by Breitenbach on June 9, 2009. Breitenbach testified that, in his opinion, defendant would have been eligible to use marijuana on April 6, 2009. He further testified that it would have been reasonable for defendant to use two grams or less per day to treat his Lyme disease, that defendant's possession of 1½ ounces would be "very reasonable," and that his possession of 2 ounces would not be unreasonable.[2]

Defendant requested that Breitenbach authorize medical use of marijuana on April 12, 2009, after the law permitting medical use became effective. Breitenbach testified that he and defendant had previously discussed the potential for defendant to use marijuana for medical purposes, but that defendant did not make his actual request until April 12, 2009. According to defendant, he had an appointment with Breitenbach on July 14, 2008, during which they discussed the upcoming vote on the medical use of marijuana, and Breitenbach indicated to defendant that he would support defendant using medical marijuana for medical purposes.

When defendant finally made the request of Breitenbach in April 2009, he did not inform Breitenbach that he had been arrested and charged with possession of marijuana; Breitenbach did not learn this until later. Breitenbach testified that the timing of defendant's request was irrelevant, however, because in his opinion, defendant is "totally eligible and capable and in need of medical marijuana," and he would have given defendant the authorization regardless of whether defendant had been charged or convicted.

---

[2] Although there seemed to be some confusion in the questioning such that Breitenbach appeared to say defendant needed to use 1½ ounces a day, we believe that this is the more reasonable interpretation of his testimony based on what was asked and answered.

Defendant completed the affidavit in support of his assertion of the MMMA for the purpose of his affirmative defense and motion to dismiss on June 9, 2009. In that affidavit, he stated that he uses marijuana for chronic pain and nausea caused by the Lyme disease. Also on June 9, 2009, defendant prepared an affidavit of qualifying patient, indicating that he was a patient qualifying for the medical use of marijuana. Defendant represented that Breitenbach had diagnosed defendant with a debilitating medical condition, Lyme disease, and that in Breitenbach's opinion defendant would likely "receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate that debilitating medical condition or symptoms associated with that debilitating medical condition."

Defendant offered into evidence his qualifying patient certificate, which indicated that his illness qualified him as eligible to use marijuana for medical purposes. He also provided his application form for a medical-marijuana registry identification card, which he prepared on April 12, 2009. The Michigan Department of Community Health issued him a registration card two weeks later. Defendant explained that he did not register for the medical-marijuana program before April 12, 2009, because the application form was not available online until April 8, 2009, two days after his arrest.

The district court issued its opinion on July 1, 2009, and found that defendant had not satisfied the requirements for stating the defense. It noted that defendant did not provide evidence to show that a physician had approved his medical use of marijuana *before* his arrest or that he had "seriously discussed the use of marijuana as a therapeutic benefit" with Breitenbach between December 2008, when the MMA was enacted, and April

6, 2009, the date of his arrest. The court focused on the language of MCL 333.26428(a)(1) that " 'a physician has *stated* that . . . the patient is likely to receive therapeutic or palliative benefit from the medical use of marijuana . . . .' " It construed that language as requiring a determination by the physician regarding the matter before a patient is arrested for an offense.

Defendant appealed to the circuit court. The circuit court interpreted the statute differently than did the district court, reasoning:

> This Court finds that the District Court's interpretation of "has stated" is at odds with the nonuse of the defined term "qualifying patient" and the use, instead, of the undefined term "patient." A qualifying patient is a person who has been diagnosed by a physician as having a debilitating medical condition. MCL 333.26423(h). The statute does not limit the use of the defense stated in MCL 333.26428(b) to qualifying patients, but more broadly offers the defense to all patients. Since the authors of the statute did not require that the person asserting the defense have been previously diagnosed by a physician as having a debilitating medical condition, it seems unlikely that they intended that the defense be limited to persons who had previously discussed the use of medical marijuana with their physician, or to persons who had obtained some statement from their physician before arrest. Giving the words used their plain and ordinary meaning, the Court cannot assign any further meaning to the words, "has stated," than that the following subject matter was expressed by a physician. The statute does not require the physician have stated this before the defendant's arrest. It merely requires that the physician has stated it. In this case, the physician stated it at the hearing. The statute simply does not require that the physician have stated it at some other time or in some other context.

Based on its interpretation, the circuit court reversed the district court's denial of defendant's motion to dismiss.

The prosecution filed an application for leave to appeal the circuit court's October 27, 2009, opinion and order, which this Court granted. *People v Kolanek*, unpublished order of the Court of Appeals, entered March 29, 2010 (Docket No. 295125).

## II. STANDARD OF REVIEW

This issue presents a question of statutory interpretation. We review de novo issues of statutory interpretation. Generally, the primary objective in construing a statute is to ascertain and give effect to the Legislature's intent. The MMMA was enacted as a result of an initiative adopted by the voters. The words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters. We presume that the meaning as plainly expressed in the statute is what was intended. [*People v Redden*, 290 Mich App 65, 76; 799 NW2d 184 (2010) (quotation marks and citations omitted).]

## III. ANALYSIS

### A. REGISTRY CARD

The prosecution first argues that a valid registry identification card is required to assert a defense under § 8 of the MMMA. This issue is easily resolved because this Court held to the contrary in *Redden*, 290 Mich App at 81. Accordingly, the fact that defendant did not have a valid registry card at the time of his arrest did not preclude him from asserting this defense.

### B. TIMING OF PHYSICIAN STATEMENT

We must next consider the specific issue ruled on by the courts below: when a physician must provide his professional opinion under MCL 333.26428(a)(1) in order for a defendant to assert the § 8 defense.

MCL 333.26428 provides in relevant part:

(a) Except as provided in section 7, a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

(b) A person may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person shows the elements listed in subsection (a).

1. AFFIRMATIVE DEFENSE

As an initial matter, we reject the prosecution's assertion that the very nature of an affirmative defense requires that it not be retroactive because it is a legal justification for the conduct that exists at the time the

crime is committed. Certain affirmative defenses, such as that provided by a statute of limitations, see MCL 767.24 and MCR 2.111(F)(3)(a), simply cannot exist at the time the conduct is committed. Additionally, nothing in the definition of an affirmative defense contains such a requirement: " 'An affirmative defense is one that admits the doing of the act charged, but seeks to justify, excuse, or mitigate it[.]' " *People v Lemons*, 454 Mich 234, 246 n 15; 562 NW2d 447 (1997) (citation omitted). An affirmative defense does not negate selected elements or facts of the charged crime. *Id.* An affirmative defense essentially concedes the facial criminality of the conduct and presents a basis to avoid conviction. *People v DuPree*, 284 Mich App 89, 99-100; 771 NW2d 470 (2009), aff'd 486 Mich 693 (2010), quoting *People v Pegenau*, 447 Mich 278, 319; 523 NW2d 325 (1994) (opinion by BOYLE, J.). Accordingly, simply because the initiative labeled the § 8 defense an affirmative defense does not resolve the question of whether a physician's recommendation that is acquired subsequent to arrest is sufficient.

### 2. "HAS STATED"

The primary substantive question in this case is how to interpret the requirement in MCL 333.26428(a)(1), that "[a] physician *has stated*" the medical benefit to the patient. We conclude that "has stated" requires that the physician's opinion be established prior to arrest. First, because the term is present perfect tense, the initiative must have intended that the physician's opinion be stated prior in time to some event. That event would reasonably be "any prosecution involving marihuana," MCL 333.26428(a), for which the defense is being presented. Thus, because the arrest begins the prosecution, the physician's opinion must be stated prior to the arrest.

Furthermore, § 8(a)(1) speaks of a physician stating that "the patient *is* likely *to* receive therapeutic or palliative benefit from the medical use of marihuana." (Emphasis added.) Thus, the language contemplates a situation where a physician, at the time of providing the statement, is envisioning the future possession and use of marijuana and rendering an opinion that it will benefit the patient when it is later used.

This interpretation is also consistent with the fact that the right to bring a motion to dismiss as provided for in § 8(b) requires a showing at an evidentiary hearing of "the elements listed in subsection (a)." It would not make sense to permit someone to "show the elements in subsection (a)," which requires that a physician "has stated" the benefits, by bringing a physician to the motion hearing to state, for the first time, that the defendant would receive such a benefit.

Our interpretation is also consistent with both California's and Oregon's interpretation of their medical-marijuana initiatives.

Under California's Medical Marijuana Program (MMP), Cal Health & Safety Code 11362.7 *et seq.*, "qualified patients," as well as persons with identification cards, are provided a defense at trial to criminal liability for certain marijuana-related crimes. Cal Health & Safety Code 11362.765. A "qualified patient" is defined as "a person who is entitled to the protections of Section 11362.5, but who does not have an identification card issued pursuant to this article." Cal Health & Safety Code 11362.7(f). Section 11362.5 is the Compassionate Use Act (CUA), which is the voter-approved initiative.[3] Section 11362.5(b)(1)(A) provides:

---

[3] The MMP was passed by the California Legislature "to address issues not included in the CUA so as to promote the fair and orderly implementation of the CUA." *People v Wright*, 40 Cal 4th 81, 85; 51 Cal Rptr 3d 80; 146 P3d 531 (2006).

> To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of [a variety of listed illnesses], or any other illness for which marijuana provides relief.

California courts determined that to be a "qualifying patient" under the MMP, a person need only meet the elements set forth in § 11362.5(b)(1)(A). See *People v Wright*, 40 Cal 4th 81, 93-94; 51 Cal Rptr 3d 80; 146 P3d 531 (2006). California courts concluded that "[i]n order to present a CUA defense ... , a defendant must have obtained a recommendation to use medical marijuana prior to his or her arrest." *People v Windus*, 165 Cal App 4th 634, 643; 81 Cal Rptr 3d 227 (2008). The interpretation is consistent with the language of the CUA, which requires that the physician "has determined," implying that the determination occur prior to the assertion of the defense. See also *People v Rigo*, 69 Cal App 4th 409, 414-415; 81 Cal Rptr 2d 624 (1999) (holding that "post-arrest approval is insufficient to allow application of the compassionate use statute" because "[t]o sanction the use of marijuana under the facts presented herein would encourage the use of marijuana for any idiosyncratic problem, whether medically valid or not, with an ensuing attempt to seek medical approval after an arrest intervened").

Oregon's statute, which was also the result of a voter initiative, is similar although not identical to Michigan's, and provides, in relevant part:

> (1) Except as provided in [Or Rev Stat] 475.316 and 475.342, it is an affirmative defense to a criminal charge of possession or production of marijuana, or any other criminal offense in which possession or production of marijuana is an element, that the person charged with the offense is a person who:

(a) Has been diagnosed with a debilitating medical condition within 12 months prior to arrest and been advised by the person's attending physician that the medical use of marijuana may mitigate the symptoms or effects of that debilitating medical condition[.] [Or Rev Stat 475.319(1)(a).]

In *Oregon v Root*, 202 Or App 491, 493-494; 123 P3d 281 (2005), the defendant challenged the trial court's refusal to permit him to assert the medical-marijuana defense based on the trial court's conclusion that the physician's certification, obtained postarrest, was insufficient under the statute. The Oregon Court of Appeals looked at the text and context of the statute and determined that the intent was that "the doctor's advice must come *before* a citizen is free to use marijuana without fear of civil or criminal penalties," based on the present perfect tense language requiring that a defendant "has been advised." *Id.* at 495-497.

We find these cases persuasive, particularly because they involve the interpretation of present perfect tense language found in similar medical-marijuana voter initiatives. Moreover, it is reasonable to assume that the affirmative defense created in § 8 was intended to protect those who actually have a medical basis for marijuana use recognized by a physician before the use began and was not intended to afford defendants an after-the-fact exemption for otherwise illegal activities. The law generally denies defendants the ability to excuse a criminal violation postarrest. Thus, defendants cannot escape prosecution for a violation of the concealed weapon statute by seeking a permit after arrest, or escape prosecution for violations of the controlled substances act by seeking a prescription for the substance from a physician after arrest. Furthermore, the very fact that the law creates the ability to legitimately have a defense to certain actions that would

otherwise be illegal indicates that persons must fulfill those requirements prior to any arrest. Otherwise, there would be no incentive for anyone to spend their time and money to go through the process; people would simply engage in the illegal activity, rolling the dice that they will not get caught, with the understanding that, if they do get arrested, they can subsequently receive a retroactive exemption. Accordingly, we hold that the language in MCL 333.26428(a)(1), "[a] physician has stated," requires that a physician's statement of the medical benefit of marijuana be made prior to arrest.

This determination does not resolve the case before us, however, because defendant provided testimony that, although he did not receive an affidavit from Breitenbach prior to his arrest, he had previously discussed his potential for medical use of marijuana with Breitenbach, who indicated that he would support defendant's using marijuana for medical purposes. The district court concluded that this testimony was insufficient because it did not occur in the time between the enactment of the MMMA and defendant's arrest (between December 4, 2008, and April 6, 2009). Rather, the evidence indicates that the discussion occurred on July 14, 2008, and was related to the upcoming vote. Thus, the next question we must answer is whether a discussion that occurred prior to the enactment of the MMMA is sufficient to establish a defense under § 8(a)(1).

Looking again at California law, California permits for the assertion of the defense physicians' determinations made before the CUA's enactment. See *Rigo*, 69 Cal App 4th at 414 (concluding that defendant's argument that "it was impossible to obtain authorization to cultivate marijuana prior to the effective date of the Act

because physicians had no legal authority to recommend or approve the use of marijuana" was without merit because it had, in fact, occurred in other cases). However, this result appears to be necessary based on California caselaw that the defense contained in the CUA could be asserted retroactively, so that a defendant's arrest prior to the Act's passage does not preclude his assertion of the defense. See *id.* at 412; *People v Trippet*, 56 Cal App 4th 1532; 66 Cal Rptr 2d 559 (1997). Because California permits retroactive assertion of the medical-marijuana defense, a defendant in California would have to have had a discussion with his physician prior to the passage of the voter initiative in order to assert the defense retroactively. Unlike California, however, Michigan has held that there is no retroactive application of the medical-marijuana defense. *People v Campbell*, 289 Mich App 533, 536; 798 NW2d 514 (2010). Accordingly, we conclude that California caselaw is inapplicable to this specific question.

In *Campbell*, this Court noted that "MCL 333.26428(a) created a new right that did not exist before the enactment of the MMA by providing an affirmative defense to a criminal defendant facing prosecution for crimes related to the use of marijuana." *Id.* Because the affirmative defense did not even exist before December 4, 2008, it seems counterintuitive to permit a prior statement by a physician to satisfy the affirmative-defense requirements. While people may have spoken with their physicians about whether a medical-marijuana law would be enacted and whether the physicians might then take action to assist them in qualifying for medical use, until the MMMA was actually enacted, such discussions were speculative. We are not convinced that such discussions prior to the enactment of the MMMA are sufficient to support a defense

that did not yet exist.[4] The more reasonable conclusion is that it was not until the passage of the MMMA that the required patient-physician discussions about eligibility for medical use of marijuana could occur. This interpretation provides protection to those who actively sought physician approval after the defense actually became available, while requiring more than just a speculative discussion about whether a person might possibly be eligible should the measure actually pass.

Consequently, we hold that in order to meet the requirement that a physician "has stated" a benefit to a patient from medical use of marijuana, the physician's statement must have occurred after the enactment of the MMMA, but prior to arrest.

### 3. APPLICATION TO DEFENDANT

Given our conclusion that the discussion with the physician must have occurred after the enactment of the MMMA, but prior to arrest, neither defendant's post-arrest affidavit nor his pre-MMMA enactment discussion with his physician is sufficient to meet the requirements of MCL 333.26428(a)(1).

Accordingly, the circuit court on appeal erred in concluding that the charge against defendant should have been dismissed by the district court and we remand for reinstatement of the charge. Because the statute does not provide that the failure to bring, or to win, a pretrial motion to dismiss deprives the defendant of the statutory defense before the fact-finder, defen-

---

[4] We also note that, as indicated above, the statement under § 8(a)(1) must provide that "the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana," and here defendant testified that Breitenbach simply stated that he would support defendant's use of marijuana. There is no testimony or evidence that in July 2008 Breitenbach expressly made the statement required by § 8(a)(1).

dant's failure to provide sufficient proofs pursuant to his motion to dismiss does not bar him from asserting the § 8 defense at trial or from submitting additional proofs in support of the defense at that time.

We do not retain jurisdiction.