**Lansing, Michigan**

# Opinion

Chief Justice:

Robert P. Young, Jr.

Justices:

Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Mary Beth Kelly
Brian K. Zahra

FILED MAY 31, 2012

STATE OF MICHIGAN

SUPREME COURT

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 142695

ALEXANDER EDWARD KOLANEK,

Defendant-Appellant.

_____

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

No. 142712

ALEXANDER EDWARD KOLANEK,

Defendant-Appellee.

_____

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

No. 142850

LARRY STEVEN KING,

     Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

MARY BETH KELLY, J.

We granted leave in these cases to consider substantive and procedural aspects of the affirmative defense of medical use of marijuana under § 8, MCL 333.26428, of the Michigan Medical Marihuana Act (MMMA).[1] Given the plain language of the statute, we hold that a defendant asserting the § 8 affirmative defense is not required to establish the requirements of § 4, MCL 333.26424, which pertains to broader immunity granted by the act. The Court of Appeals erred by reaching the opposite conclusion in *People v King*,[2] and we therefore reverse the Court of Appeals' judgment in *King*.

Further, to establish the affirmative defense under § 8, we hold that a defendant must show under § 8(a)(1) that the physician's statement was made after enactment of the MMMA but before commission of the offense. The Court of Appeals reached this conclusion in *People v Kolanek*,[3] and we affirm the Court of Appeals in this regard. However, the Court of Appeals also held that defendant could reassert the affirmative defense at trial, despite his failure at the evidentiary hearing to establish the existence of a

_____

[1] MCL 333.26421 *et seq*. Although the act uses the spelling "marihuana," we use the more common spelling "marijuana" throughout this opinion.

[2] *People v King*, 291 Mich App 503; 804 NW2d 911 (2011).

[3] *People v Kolanek*, 291 Mich App 227; 804 NW2d 870 (2011).

2

timely physician's statement under § 8(a)(1). This was error, and we reverse that portion of the Court of Appeals' holding.

## I. FACTUAL BACKGROUND

### A. *PEOPLE v KING*

In May 2009, police officers received an anonymous tip that marijuana was growing in the backyard of defendant Larry King's home in Owosso, Michigan. The officers went to the residence and observed, from a neighbor's driveway, marijuana plants growing inside a chain-link dog kennel that was wrapped on three sides with a plastic tarp. The officers then spoke with King, who showed them his "registry identification card" for medical use of marijuana that had been issued April 20, 2009. The officers asked to see the marijuana plants, and King consented. Using a key, he unlocked the padlock on the kennel. Inside the kennel were six marijuana plants. The kennel was six feet tall, was not anchored to the ground, and was open on top.

The officers then obtained a search warrant for King's home. Inside, the officers discovered six marijuana plants in his living-room closet, which did not have a lock on it. The back door to the home also lacked a lock. In addition to the live plants, the officers also found processed marijuana in two prescription bottles; several plastic bags containing marijuana stalks, buds, and leaves; two additional dead marijuana plants; and a food dehydrator.

King was arrested and charged with one count of manufacturing marijuana.[4] At the preliminary examination in the district court, he moved to dismiss the charge under § 8 of the MMMA.[5] The court denied King's motion and bound him over on the charge.[6]

King renewed his motion to dismiss in the circuit court, again asserting that he had established the elements of the affirmative defense under § 8. The prosecutor responded that because King had failed to comply with § 4(a) by not keeping his marijuana in an "enclosed, locked facility," King could not establish the elements of the affirmative defense under § 8. The circuit court disagreed with the prosecutor that King was not in compliance with § 4(a), ruling instead that King had satisfied the requirements of § 4 because he was a qualifying patient with a valid registry identification card; possessed no more than 12 plants in an enclosed, locked facility; and was entitled to the presumption that he was engaged in the medical use of marijuana. The circuit court further reasoned that King, in accordance with § 8, had obtained a valid physician's statement, possessed a reasonably necessary amount of marijuana consistently with § 4, and was engaged in the use and possession of marijuana to treat a serious medical condition. The circuit court

---

[4] MCL 333.7401(2)(d)(*iii*).

[5] Although King had a valid registry card, he never asserted that he was entitled to immunity under § 4 of the MMMA.

[6] The district court did not hold an evidentiary hearing on King's motion to dismiss. Rather, the court denied the motion on the basis that the evidence supported binding King over on the charge.

4

therefore ruled that King's use of marijuana was "in accordance with [the MMMA]"[7] and that King was entitled to dismissal of the charge under § 8.[8]

The Court of Appeals reversed. The Court of Appeals held that the "express reference" in § 8 "to § 7 [MCL 333.26427] and the statement in § 7(a) that medical use of marijuana must be carried out in accordance with the provisions of the MMMA require [King] to comply with the provisions of § 4 concerning growing marijuana."[9] Applying its interpretation of the statute, the Court of Appeals concluded that because King had failed to keep the plants in an "'enclosed, locked facility,'" he had not complied with § 4(a). As a consequence, the Court held that he also failed to meet the requirements for the affirmative defense in § 8.[10] The Court of Appeals reversed the circuit court and remanded for further proceedings.

We granted leave to consider, in relevant part, "whether the language '[e]xcept as provided in section 7' in § 8(a) required the defendant to fulfill all of the conditions set forth in § 4 in order to have a valid affirmative defense under § 8(a)."[11]

---

[7] See MCL 333.26427(a).

[8] The circuit court reached this conclusion without holding an evidentiary hearing on King's motion to dismiss under § 8.

[9] *King*, 291 Mich App at 510.

[10] *Id*. at 514, quoting MCL 333.26424(a).

[11] *People v King*, 489 Mich 957 (2011). Our grant order in *King* contained several other issues. However, because resolution of those questions is not necessary to the disposition of King's appeal, we have limited our consideration to the issue stated above.

5

### B. *PEOPLE v KOLANEK*

On April 6, 2009, police arrested defendant Alexander Kolanek for the possession of eight marijuana cigarettes. Kolanek did not have a registry identification card at the time of his arrest. The next day, the prosecution charged Kolanek with possession of marijuana.[12]

Six days later, on April 12, 2009, Kolanek requested that his physician of nine years, Dr. Ray Breitenbach, authorize his medical use of marijuana to treat chronic severe pain and nausea caused by Lyme disease. Breitenbach complied with this request on the basis of his professional opinion that Kolanek would receive a therapeutic benefit from using marijuana. The same day, Kolanek applied for a registry identification card. The Michigan Department of Community Health issued him a card two weeks later on May 1, 2009.

On June 9, 2009, Kolanek moved to dismiss the criminal charge pending against him, asserting the affirmative defense in § 8 of the MMMA. The district court held an evidentiary hearing on the motion, at which Breitenbach testified that Kolanek would have been eligible for the medical use of marijuana on the date of his arrest. However, despite having discussed Kolanek's potential medical use of marijuana on July 14, 2008, before the enactment of the MMMA, Breitenbach testified that he did not provide Kolanek with authorization to use marijuana until April 12, 2009, six days after the date of Kolanek's arrest.[13]

---

[12] MCL 333.7403(2)(d).

[13] Kolanek testified that he mentioned the upcoming vote on the medical use of marijuana during an appointment with Breitenbach on July 14, 2008. According to Kolanek's

6

The district court rejected the prosecutor's argument that Kolanek must have had a valid registry identification card to assert a § 8 defense, but nonetheless denied Kolanek's motion to dismiss. The court reasoned that the language "has stated" in § 8(a)(1) contemplates a physician's statement made before commission of the offense. Because Kolanek had not obtained such a statement, the court concluded that Kolanek had failed to meet his burden under § 8.

Kolanek appealed in the circuit court, which reversed the district court's ruling. In the circuit court's view, the district court's interpretation of § 8(a)(1) was erroneous. Section 8(a)(1), according to the circuit court, "does not require the physician have stated [sic] this before the defendant's arrest. It merely requires that the physician has stated it. In this case, the physician stated it at the hearing."

The Court of Appeals reversed the circuit court. Like the district court, the panel rejected the prosecution's argument that Kolanek had to meet the registry-card requirement of § 4 in order to assert a valid defense under § 8.[14] The Court of Appeals also concluded that Kolanek had not produced sufficient evidence of the § 8 affirmative defense.[15] The Court of Appeals reasoned, like the district court, that the phrase "has stated" in § 8(a)(1) contemplates a physician's statement made after enactment of the MMMA but before the offense occurs.[16] It reversed the circuit court's decision and

testimony, Breitenbach responded that if it was legalized, he would support Kolanek in using it.

[14] *Kolanek*, 291 Mich App at 233.

[15] *Id.* at 241.

[16] *Id.* at 235, 240-241.

remanded for reinstatement of the charge.[17]  In doing so, the Court provided directions on remand:

> Because the statute does not provide that the failure to bring, or to win, a pretrial motion to dismiss deprives the defendant of the statutory defense before the factfinder, [Kolanek's] failure to provide sufficient proofs pursuant to his motion to dismiss does not bar him from asserting the § 8 defense at trial or from submitting additional proofs in support of the defense at that time.[18]

We granted Kolanek's application for leave to appeal to consider "whether, in order to have a valid affirmative defense for the medical use of marijuana under MCL 333.26428(a)(1), a defendant must obtain the required physician's statement after the date of enactment of the [MMMA], but before the date of the defendant's arrest."[19]  We also granted the prosecution's application for leave to appeal to consider "whether a defendant may assert the affirmative defense under MCL 333.26428(a) as a defense at trial after a court has denied the defendant's motion to dismiss under MCL 333.26428(b)" and also the issue raised in *King* regarding whether a defendant must satisfy § 4 to have a valid § 8 defense.[20]

---

[17] *Id*. at 241.

[18] *Id*. at 241-242.

[19] *People v Kolanek*, 489 Mich 956 (2011) (Docket No. 142695).

[20] *People v Kolanek*, 489 Mich 956, 956-957 (2011) (Docket No. 142712).  Our grant order also requested the parties to brief "whether a defendant is eligible to assert the affirmative defense of medical use of marijuana under MCL 333.26428(a) without first obtaining a valid "registry identification card[.]"  *Id.* at 956.  However, because all the parties concede that unregistered patients and persons can assert the affirmative defense under § 8, we do not separately address this issue at length.

## II. STANDARD OF REVIEW

These cases present issues of statutory interpretation. We review questions of statutory interpretation de novo.[21]

## III. ANALYSIS

## A. THE MICHIGAN MEDICAL MARIHUANA ACT

The MMMA was proposed in a citizen's initiative petition, was elector-approved in November 2008, and became effective December 4, 2008.[22] The purpose of the MMMA is to allow a limited class of individuals the medical use of marijuana, and the act declares this purpose to be an "effort for the health and welfare of [Michigan]

---

[21] *People v Feezel*, 486 Mich 184, 205; 783 NW2d 67 (2010).

[22] Const 1963, art 2, § 9 reserves to the people of Michigan the power to enact laws by initiative. The ballot proposal at the November 2008 election, Proposal 08-1, explained to voters that the MMMA would:

- Permit physician approved use of marijuana by registered patients with debilitating medical conditions including cancer, glaucoma, HIV, AIDS, hepatitis C, MS and other conditions as may be approved by the Department of Community Health.

- Permit registered individuals to grow limited amounts of marijuana for qualifying patients in an enclosed, locked facility.

- Require Department of Community Health to establish an identification card system for patients qualified to use marijuana and individuals qualified to grow marijuana.

- Permit registered and unregistered patients and primary caregivers to assert medical reasons for using marijuana as a defense to any prosecution involving marijuana.

citizens."[23]  To meet this end, the MMMA defines the parameters of legal medical-marijuana use, promulgates a scheme for regulating registered patient use and administering the act, and provides for an affirmative defense, as well as penalties for violating the MMMA.

The MMMA does *not* create a general right for individuals to use and possess marijuana in Michigan.  Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law.[24]  Rather, the MMMA's protections are limited to individuals suffering from serious or debilitating medical conditions or symptoms, to the extent that the individuals' marijuana use "is carried out in accordance with the provisions of [the MMMA]."[25]

The cases before us involve two sections of the MMMA that provide separate protections from prosecution for offenses involving marijuana.  The first, § 4, MCL 333.26424, grants "qualifying patient[s]" [26] who hold "registry identification card[s]"[27]

---

[23] MCL 333.26422(c).

[24] See MCL 333.7403(2)(d) (making possession of marijuana a misdemeanor); MCL 333.7401(2)(d) (making the manufacture or delivery of marijuana or the possession of marijuana with intent to deliver it a felony).  Marijuana remains a schedule 1 substance in Michigan's Public Health Code, MCL 333.7212(1)(c), and medical use of marijuana is not recognized as a legal activity at the federal level.  The MMMA acknowledges that federal law continues to prohibit marijuana use, but justifies allowing limited marijuana use on the grounds that research suggests that marijuana has beneficial medical uses, the majority of marijuana prosecutions are made under state law, and states are not required to enforce federal laws.  MCL 333.26422.

[25] MCL 333.26427(a).

[26] The MMMA defines "qualifying patient" as "a person who has been diagnosed by a physician as having a debilitating medical condition."  MCL 333.26423(h).  "Debilitating medical condition" means one or more of the following:

10

broad immunity from criminal prosecution, civil penalties, and disciplinary actions, and provides in part:

> A qualifying patient who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana[28] in accordance with this act, provided that the qualifying patient possesses an amount of marihuana that does not exceed 2.5 ounces of usable marihuana, and, if the qualifying patient has not specified that a primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility.

---

> (1) Cancer, glaucoma, positive status for human immunodeficiency virus, acquired immune deficiency syndrome, hepatitis C, amyotrophic lateral sclerosis, Crohn's disease, agitation of Alzheimer's disease, nail patella, or the treatment of these conditions.

> (2) A chronic or debilitating disease or medical condition or its treatment that produces 1 or more of the following: cachexia or wasting syndrome; severe and chronic pain; severe nausea; seizures, including but not limited to those characteristic of epilepsy; or severe and persistent muscle spasms, including but not limited to those characteristic of multiple sclerosis.

> (3) Any other medical condition or its treatment approved by the [Department of Community Health], as provided for in [MCL 333.26425(a)]. [MCL 333.26423(a).]

[27] "Registry identification card" is defined as "a document issued by the [Department of Community Health] that identifies a person as a registered qualifying patient or registered primary caregiver." MCL 333.26423(i).

[28] The MMMA defines "medical use" to mean "the acquisition, possession, cultivation, manufacture, use, internal possession, delivery, transfer, or transportation of marihuana or paraphernalia relating to the administration of marihuana to treat or alleviate a registered qualifying patient's debilitating medical condition or symptoms associated with the debilitating medical condition." MCL 333.26423(e).

11

Any incidental amount of seeds, stalks, and unusable roots shall also be allowed under state law and shall not be included in this amount.[29]

The second provision, § 8, MCL 333.26428, applies to "patients" generally, provides an affirmative defense to charges involving marijuana for its medical use, and states in relevant part:

(a) Except as provided in [MCL 333.26427], a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship,[30] the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

---

[29] MCL 333.26424(a).

[30] Although the MMMA does not define "bona fide physician-patient relationship," a joint statement by the Michigan Board of Medicine and the Michigan Board of Osteopathic Medicine and Surgery advises that this term envisions "a pre-existing and ongoing relationship with the patient as a treating physician." *Statement of the Board of Medicine and Board of Osteopathic Medicine and Surgery Regarding Certification for Medical Use of Marihuana by Michigan Physicians* <https://www.michigan.gov/documents/lara/lara_Medical_Marihuana_Final_Written_Certification_Statement_8-15-11_376283_7.pdf> (accessed May 25, 2012).

12

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.

(b) A person may assert the medical purpose for using marihuana in a motion to dismiss, and the charges shall be dismissed following an evidentiary hearing where the person shows the elements listed in subsection (a).

(c) If a patient or a patient's primary caregiver demonstrates the patient's medical purpose for using marihuana pursuant to this section, the patient and the patient's primary caregiver shall not be subject to the following for the patient's medical use of marihuana:

(1) disciplinary action by a business or occupational or professional licensing board or bureau; or

(2) forfeiture of any interest in or right to property.

Our consideration of the availability of the affirmative defense in § 8 and the immunity conferred under § 4 is guided by the traditional principles of statutory construction. However, because the MMMA was the result of a voter initiative, our goal is to ascertain and give effect to the intent of the electorate, rather than the Legislature, as reflected in the language of the law itself.[31] We must give the words of the MMMA their ordinary and plain meaning as would have been understood by the electorate.[32]

---

[31] Cf. *Feezel*, 486 Mich at 205; *Schmidt v Dep't of Ed*, 441 Mich 236, 241-242; 490 NW2d 584 (1992). Laws enacted by the people, rather than the Legislature, have the same force and effect and are on equal footing. *Advisory Opinion on Constitutionality of 1982 PA 47*, 418 Mich 49, 66; 340 NW2d 817 (1983).

[32] See *People v Barbee*, 470 Mich 283, 286; 681 NW2d 348 (2004).

Clearly, § 4 applies only to "qualifying patients" who have obtained registry cards. Under this section, those patients are provided broad immunity from "arrest, prosecution, or penalty in any manner" and protection from the denial of "any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau," provided that these patients possess not more than 2.5 ounces of usable marijuana and 12 marijuana plants kept in "an enclosed, locked facility."[33] Additional protections in § 4 prohibit the denial of custody or visitation with a minor based on the medical use of marijuana in accordance with the MMMA[34] and provide a presumption that registered cardholders possessing an appropriate amount of marijuana are engaged in the medical use of marijuana.[35]

Comparatively, § 8 provides an affirmative defense to "patients" or "a person" generally.[36] As the prosecution in both cases concedes, the language of § 8 permits those individuals who are not registered cardholding patients to assert the § 8 affirmative defense.[37] Under § 8, a patient in any criminal prosecution involving marijuana may

---

[33] MCL 333.26424(a).

[34] MCL 333.26424(c).

[35] MCL 333.26424(d).

[36] All the parties concede that § 8 is, in fact, an affirmative defense, and we agree with this characterization. As we have explained, an affirmative defense "'admits the doing of the act charged, but seeks to justify, excuse, or mitigate it . . . .' It does not 'negate selected elements or facts of the crime.'" *People v Lemons*, 454 Mich 234, 246 n 15; 562 NW2d 447 (1997) (citations omitted).

[37] Not only does the textual language of the MMMA support this conclusion, but so does the text of the ballot proposal, which stated in part that the proposed law would "[p]ermit

establish an affirmative defense requiring dismissal of the charges if the patient can establish that (1) "[a] physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana," (2) the patient did not possess an amount of marijuana that was more than "reasonably necessary" for this purpose, and (3) the patient's use was "to treat or alleviate the patient's serious or debilitating medical condition or symptoms . . . ."[38] The protections afforded a patient under § 8 are much less broad than those provided under § 4 and extend only to prosecutions involving marijuana, disciplinary actions by a business or occupational or professional licensing board or bureau, and forfeiture of any interest in or right to property.

## B. REQUIREMENTS OF THE § 8 AFFIRMATIVE DEFENSE

The facts of *King* and *Kolanek* require us to consider whether a defendant must satisfy the requirements of § 4 in order to have a valid defense under § 8. The prosecution argues that the language "except as provided by section 7" in § 8(a) incorporates the requirements of § 4, so that a defendant must establish under § 8 that he did not possess more than 2.5 ounces of usable marijuana and did not possess more than 12 plants contained in an "enclosed, locked facility."

---

registered and unregistered patients and primary caregivers to assert medical reasons for using marijuana as a defense to any prosecution involving marijuana."

[38] MCL 333.26428(a)(1) through (3).

The relevant language of § 8 provides, "*Except as provided in section 7*, a patient and a patient's primary caregiver, if any, may assert *the medical purpose for using marihuana* as a defense to any prosecution involving marihuana . . . ."[39] Section 7 provides a list of places where and situations in which the MMMA prohibits a person from using or possessing marijuana. Specifically, it states, in relevant part:

(a) The *medical use of marihuana* is allowed under state law *to the extent that it is carried out in accordance with the provisions of this act*.

(b) *This act shall not permit* any person to do any of the following:

(1) Undertake any task under the influence of marihuana, when doing so would constitute negligence or professional malpractice.

(2) Possess marihuana, or otherwise engage in the medical use of marihuana:

(A) in a school bus;

(B) on the grounds of any preschool or primary or secondary school; or

(C) in any correctional facility.

(3) Smoke marihuana:

(A) on any form of public transportation; or

(B) in any public place.

(4) Operate, navigate, or be in actual physical control of any motor vehicle, aircraft, or motorboat while under the influence of marihuana.

(5) Use marihuana if that person does not have a serious or debilitating medical condition.[40]

---

[39] MCL 333.26428(a) (emphasis added).

[40] MCL 333.26427 (emphasis added).

Reading §§ 7 and 8 together, it is clear that even if a defendant can establish the elements of the affirmative defense under § 8, the defendant will not be entitled to dismissal under § 8 if the possession or medical use of marijuana at issue was in a manner or place prohibited under § 7(b).

Under the Court of Appeals' construction, which the prosecution urges that we adopt, the phrase "in accordance with the provisions of this act" in § 7(a) requires a defendant to satisfy all the requirements of § 4 in order to establish the § 8 affirmative defense. Principles of statutory construction, however, do not support this conclusion. Nowhere does § 8 state that a defendant must also establish the requirements of § 4 in order to present a valid affirmative defense under § 8. Precisely because such a requirement is lacking, assertion of the § 8 defense without establishment of the § 4 requirements is "in accordance with the provisions of [the MMMA]."

The textual distinctions among §§ 4, 7(a), and 8 provide further support for our interpretation that the plain language of § 8 does not require compliance with the requirements of § 4. Sections 4 and 8 provide separate and distinct protections and require different showings, while § 7(a), by its plain terms, does not incorporate § 4 into § 8.[41] Both §§ 4 and 7(a) refer to the "medical use" of marijuana, which the MMMA

---

[41] The Court of Appeals recognized this distinction in *People v Redden*, 290 Mich App 65, 81; 799 NW2d 184 (2010), in which the Court rejected the same argument that the prosecution raises here:

> [T]his position ignores that the MMMA provides two ways in which to show legal use of marijuana for medical purposes in accordance with the act. Individuals may either register and obtain a registry identification card under § 4 or remain unregistered and, if facing criminal prosecution, be forced to assert the affirmative defense in § 8.

17

specifically defines as the use of marijuana "to treat or alleviate a *registered qualifying patient's* debilitating medical condition or symptoms associated with the debilitating medical condition."[42] Comparatively, § 8 refers primarily to the "medical purpose" of marijuana and refers only to "patients," not "registered qualifying patient[s]."[43] Thus, §§ 4 and 7(a) have no bearing on the requirements of § 8, and the requirements of § 4 cannot logically be imported into the requirements of § 8 by means of § 7(a).

Further, in both cases, the prosecution concedes that the § 8 affirmative defense is available to unregistered patients. There is simply no principled basis on which to conclude that a defendant asserting a § 8 affirmative defense must meet some of the § 4 requisites, but not others, i.e., the registry card requirement. Moreover, if § 8 required a defendant to establish all the requirements of § 4, then unregistered patients would never be eligible for the affirmative defense under § 8. The result would be to effectively abolish the differing protections extended to registered and unregistered patients. This

* * *

> [A]dherence to § 4 provides protection that differs from that of § 8. Because of the differing levels of protection in §§ 4 and 8, the plain language of the statute establishes that § 8 is applicable for a patient who does not satisfy § 4.

[42] MCL 333.26423(e) (emphasis added).

[43] Section 4 further refers to requirements applicable only to registered patients. The term "enclosed, locked facility" used in § 4(a) is defined as a "closet, room, or other enclosed area equipped with locks or other security devices *that permit access only by a registered primary caregiver or registered qualifying patient*." MCL 333.26423(c) (emphasis added). It would make no sense to import this requirement into § 8 given that unregistered patients could never meet the definition of maintaining "an enclosed, locked facility" because they are not registered qualifying patients.

18

interpretation is internally inconsistent, renders the affirmative defense in § 8 a nullity, and is contrary to the electors' intent to permit both registered and unregistered patients to assert medical reasons for using marijuana as a defense to any prosecution involving marijuana.

We also reject the argument that § 8 must incorporate § 4 because otherwise unregistered patients could possess more than 2.5 ounces of usable marijuana and keep more than 12 marijuana plants outside an enclosed locked facility while registered users cannot do so in an enclosed locked facility. The prosecution asserts that this result affords unregistered patients more protection under the MMMA than registered patients. This assertion is false and premised on a basic misunderstanding of how the differing protections of § 4 and § 8 operate. The stricter requirements of § 4 are intended to encourage patients to register with the state and comply with the act in order to avoid arrest and the initiation of charges and obtain protection for other rights and privileges. If registered patients choose not to abide by the stricter requirements of § 4, they will not be able to claim this broad immunity, but will be forced to assert the affirmative defense under § 8, just like unregistered patients.[44] In that instance, registered patients will be entitled to the same lower level of protection provided to unregistered patients under § 8. This result is not absurd, but is the consequence of the incentives created by the wider protections of § 4.

Accordingly, we hold that to establish the elements of the affirmative defense in § 8, a defendant need not establish the elements of § 4. Any defendant, regardless of

---

[44] See *Redden*, 290 Mich App at 81.

19

registration status, who possesses more than 2.5 ounces of usable marijuana or 12 plants not kept in an enclosed, locked facility may satisfy the affirmative defense under § 8. As long as the defendant can establish the elements of the § 8 defense and none of the circumstances in § 7(b) exists, that defendant is entitled to the dismissal of criminal charges.

Consequently, we reverse the Court of Appeals in *King* because it held that a defendant asserting a § 8 defense must also meet all the requirements of § 4. King, who had a valid patient registry card, may move for dismissal under § 8 and is not required to establish the immunity requirements of § 4 in order to satisfy the requirements of the § 8 affirmative defense.[45] Similarly, Kolanek, who did not have a patient registry card at the time of the offense, is likewise entitled to move for dismissal under § 8 and does not have to establish the requirements of § 4 to be entitled to dismissal under § 8. The Court of Appeals in *Kolanek* reached this same conclusion, and we therefore affirm the Court of Appeals in this regard.

### C. TIMELINESS OF PHYSICIAN'S STATEMENT UNDER § 8(a)(1)

The facts of *Kolanek* require us to determine *when* a physician must provide a statement that a defendant is likely to receive therapeutic or palliative benefit from the

---

[45] Because we have concluded that a defendant need not establish the requirements of § 4 in order to satisfy the elements of the § 8 affirmative defense, we need not address the Court of Appeals' holding that Kolanek did not satisfy the "enclosed, locked facility" requirement of § 4. However, to provide some guidance, we note that courts considering whether a defendant's plants were kept in an "enclosed, locked facility" should focus on whether the security device functions to "permit access *only* by a registered primary caregiver or registered qualifying patient." MCL 333.26423(c) (emphasis added).

medical use of marijuana under § 8(a)(1) in order for the defendant to assert the affirmative defense. This inquiry requires us to answer two related questions: whether the MMMA applies retroactively, so that a defendant may have a viable defense based on a physician's statement made before the MMMA's effective date, and whether a physician's statement made after commission of the offense, but after enactment of the MMMA, satisfies § 8(a)(1).

### 1. PRE-MMMA PHYSICIAN'S STATEMENTS

With regard to the first question, Kolanek argues that the MMMA applies retroactively and that he therefore has a viable affirmative defense based on his physician's statements made five months before enactment of the MMMA. In determining whether a statute adopted by initiative applies retroactively, the intent of the electors governs.[46] Generally, "'statutes are presumed to operate prospectively unless the contrary intent is clearly manifested.'"[47] However, statutes that "operate in furtherance of a remedy or mode of procedure" and that "neither create new rights nor destroy, enlarge, or diminish existing rights are generally held to operate retrospectively" absent a contrary legislative intent.[48]

We agree with the Court of Appeals that § 8 creates an affirmative defense that did not previously exist for patients with serious medical conditions who are facing

---

[46] Cf. *Brewer v A D Transp Express, Inc*, 486 Mich 50, 55-56; 782 NW2d 475 (2010).

[47] *Franks v White Pine Copper Div*, 422 Mich 636, 671; 375 NW2d 715 (1985), quoting *Selk v Detroit Plastic Prod*, 419 Mich 1; 345 NW2d 184 (1984).

[48] *Franks*, 422 Mich at 672.

prosecution for possession of marijuana. This defense is a new substantive right available to some defendants.[49] Section 8 cannot be fairly described as a mere correction to an oversight in the law. Absent from the MMMA is any specific indication that the act is to be applied retrospectively.[50] Therefore, the presumption of prospective application controls. Accordingly, we conclude that the MMMA does not apply retroactively and only has prospective effect.

Consequently, it would make no sense to permit Kolanek to rely on a physician's statement made before the MMMA's enactment. At the time of the July 2008 conversation between Kolanek and his physician, state law prohibited the medical use of marijuana, and Breitenbach's speculative statements at that time could not have formed the basis of an affirmative defense. Because the MMMA does not apply retroactively, those pre-MMMA statements are legally inoperative in the present prosecution. Pre-MMMA physician's statements, which could not have been used to insulate a defendant from criminal prosecution before enactment of the MMMA, are not somehow transformed to protect a defendant after enactment of the MMMA. Because the MMMA does not apply retroactively, we hold that physician's statements made before its enactment cannot satisfy § 8(a)(1).

---

[49] *Kolanek*, 291 Mich App at 240-241, discussing *People v Campbell*, 289 Mich App 533, 536; 798 NW2d 514 (2010) (reaching the same conclusion).

[50] See *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 584; 624 NW2d 180 (2001) (explaining that the Legislature can make clear its intent for a statute to apply retroactively by explicitly so stating).

## 2. POSTOFFENSE PHYSICIAN'S STATEMENTS

Kolanek also argues that the physician's statement he obtained six days after committing the offense satisfied the requirements of § 8(a)(1) because that provision merely requires that a physician "has stated" at some point in time that the patient has a medical need for marijuana. When subdivisions (1) through (3) are read together, it becomes clear that the physician's statement must necessarily have occurred before the commission of the offense if it is to be used as the basis for a § 8 defense.

As noted, § 8(a) provides in relevant part:

> (1) A physician *has stated* that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient *is likely to receive* therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

> (2) The patient . . . [was] . . . in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms . . . ; and

> (3) The patient . . . [was] engaged in the . . . possession . . . of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition.[51]

Beginning with § 8(a)(1), the term "has stated" is in the present perfect tense, which "indicates action that was started in the past and has recently been completed or is

---

[51] MCL 333.26428(a) (emphasis added).

continuing up to the present time."[52] In *People v Stewart*,[53] we considered the temporal limits of another present-perfect-tense term, "has cooperated," and concluded it meant that a defendant's cooperation must have occurred sometime before the defendant applied for parole. Similarly, the term "has stated" indicates that the physician's statement must have been made sometime before a defendant filed the motion to dismiss under § 8 but not necessarily before commission of the offense.

Other language of § 8(a)(1), however, indicates that the statement must in fact have been made even before the patient began using marijuana for the defense to apply. Reading the term "has stated" in conjunction with the language in the same sentence "is likely to receive [benefit from the medical use of marijuana]" indicates a future event that will occur after the physician's statement. Stated differently, § 8(a)(1) contemplates that a patient will not start using marijuana for medical purposes until after the physician has provided a statement of approval. It necessarily follows that any marijuana use before the physician's statement was not for medical purposes.

The language of § 8(a)(2) and (3) supports this conclusion. Section 8(a)(2) requires a patient to establish that he or she had a "reasonably necessary" quantity of marijuana "for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms . . . ." Similarly, § 8(a)(3) requires a showing that the patient possessed the marijuana "to treat or alleviate the patient's serious or debilitating

---

[52] Sabin, *The Gregg Reference Manual* (11th ed) (New York: Glenco McGraw-Hill, 2011), p 314.

[53] *People v Stewart*, 472 Mich 624, 631-632; 698 NW2d 340 (2005).

medical condition or symptoms . . . ." Both provisions presuppose a physician's prior diagnosis of a serious or debilitating medical condition or symptoms before a patient may treat the condition with marijuana. Consequently, reading these provisions together, it is clear that the physician's statement under § 8(a)(1) must have been made before a patient began using marijuana for medical purposes. Thus, we hold that in order to satisfy the requirements of § 8(a)(1), a defendant must establish that the physician's statement was made before the commission of the offense.[54]

This interpretation makes sense in light of the laws criminalizing possession, manufacture, and delivery of marijuana and the fact that the MMMA allows such charges to be dismissed under certain circumstances. A reasonable inference to be drawn from the MMMA's provisions allowing the medical use of marijuana is that § 8 is intended to protect those individuals who believe they have a genuine medical need for marijuana that has been recognized by a physician, but for whatever reason have not obtained a registry card. It would be illogical to extend this protection to individuals who have not obtained a physician's recognition of their medical need because the MMMA provides no protections to such individuals. An after-the-fact exception to criminal liability would encourage individuals to engage in self-medication or criminal activity on the basis of the possibility that if prosecuted they could then obtain a doctor's approval postoffense and avoid criminal charges.[55] Because the MMMA was not intended to legitimize illegal

---

[54] See also *People v Reed*, 294 Mich App 78; __ NW2d __ (2011) (holding the same).

[55] The Court of Appeals in *Reed*, 294 Mich App at 84, recognized the nonsensical result if § 8(a)(1) could be satisfied by a postoffense physician's statement:

marijuana use, it makes sense to require that a defendant obtain a physician's statement authorizing the medical use of marijuana before the defendant actually uses marijuana for that purpose.[56]

In *Kolanek*, neither the postarrest physician's statements nor the physician's statements made before the enactment of the MMMA satisfy, as a matter of law, the requirement under § 8(a)(1). Thus, Kolanek, although entitled to raise the § 8 defense in a motion for an evidentiary hearing, failed to establish at that hearing the requirements of the § 8 affirmative defense and he cannot now, for reasons we will explain, present the defense to the jury.

### D.  RAISING THE § 8 AFFIRMATIVE DEFENSE

The facts of *Kolanek* also require us to consider whether a defendant may reassert the defense at trial after the circuit court has denied the defendant's motion to dismiss

---

It would be absurd if it were possible to assert the § 8 affirmative defense by obtaining a physician's statement after the crime had been committed but before an arrest has been made. The law would provide less incentive to obtain a qualifying physician's statement if it were construed in the manner defendant suggests.

[56] In this regard, the Court of Appeals in *Kolanek* recognized:

The law generally denies defendants the ability to excuse a criminal violation postarrest. Thus, defendants cannot escape prosecution for a violation of the concealed weapon statute by seeking a permit after arrest, or escape prosecution for violations of the controlled substances act by seeking a prescription for the substance from a physician after arrest. Furthermore, the very fact that the law creates the ability to legitimately have a defense to certain actions that would otherwise be illegal indicates that persons must fulfill those requirements prior to any arrest. Otherwise, there would be no incentive for anyone to spend their time and money to go through the process . . . . [*Kolanek*, 291 Mich App at 238-239.]

under § 8. As we have explained, the medical use of marijuana is a statutorily created affirmative defense. Section 8(a) provides that a patient or person may assert this defense in "any prosecution involving marihuana" and that the defense "shall be presumed valid" if its elements can be established.[57] Section 8(b) provides that a person "*may* assert [this defense] in a motion to dismiss, and the charges *shall be dismissed following an evidentiary hearing* where the person shows the elements listed in subsection (a)."[58] This scheme makes clear that the burden of proof rests with the defendant, that the defendant "may" move to dismiss the charges by asserting the defense in a motion to dismiss, and that dismissal "shall" follow an evidentiary hearing. This last requirement is significant because it indicates that the § 8 defense cannot be asserted for the first time at trial, but must be raised in a pretrial motion for an evidentiary hearing.

A trial judge considering such a motion must be guided by well-established principles of criminal procedure. Questions of fact are the province of the jury, while question of law are reserved to the courts.[59] Judges presiding over criminal trials regularly separate legal questions from factual ones, leaving to the jury those issues requiring factual resolution and pertaining to the credibility of witnesses and weight of the evidence. Trial judges undertake this same inquiry with respect to the defenses that a defendant raises. If, for example, a defendant raises a defense but fails to present

---

[57] MCL 333.26428(a).

[58] MCL 333.26428(b) (emphasis added).

[59] See *Hamilton v People*, 29 Mich 173 (1874); *People v Mortimer*, 48 Mich 37; 11 NW 776 (1882); *People v Waldvogel*, 49 Mich 337; 13 NW 620 (1882).

evidence from which a reasonable jury could conclude that the elements of the defense have been met, then the defendant is not entitled to the defense instruction and the jury is precluded from considering the defense.[60] Conversely, if a defendant produces sufficient evidence of the elements of the defense, then the question whether defendant has asserted a valid defense is for the jury to decide.[61]

Thus, if a defendant raises a § 8 defense, there are no material questions of fact, and the defendant "shows the elements listed in subsection (a),"[62] then the defendant is entitled to dismissal of the charges following the evidentiary hearing. Alternatively, if a defendant establishes a prima facie case for this affirmative defense by presenting evidence on all the elements listed in subsection (a) but material questions of fact exist, then dismissal of the charges is not appropriate and the defense must be submitted to the jury.[63] Conflicting evidence, for example, may be produced regarding the existence of a

---

[60] See, e.g., *United States v Bailey*, 444 US 394, 415; 100 S Ct 624; 62 L Ed 2d 575 (1980) (holding that a criminal defendant must produce evidence of all the elements of an affirmative defense to be entitled to an instruction on that defense theory); *Lemons*, 454 Mich at 248 ("'Unless a defendant submits sufficient evidence to warrant a finding of [the common-law affirmative defense of] duress, the trial court is not required to instruct the jury on that defense.'") (citation omitted); *People v Mills*, 450 Mich 61, 81; 537 NW2d 909 (1995) ("A trial court is required to give a requested instruction [for a defense theory], except where the theory is not supported by evidence.").

[61] See *People v Dupree*, 486 Mich 693, 712; 788 NW2d 399 (2010) (holding that a defendant who had produced sufficient prima facie evidence of the affirmative defense of self-defense was entitled to the defense instruction).

[62] MCL 333.26428(b).

[63] The Court of Appeals has reached the same conclusion in a number of MMMA cases. See, e.g., *Redden*, 290 Mich App at 83-85 (ruling that the circuit court improperly acted as the trier of fact when "colorable issues" remained concerning the defendant's § 8 defense, which should have been submitted to a jury); *People v Anderson*, 293 Mich App

bona fide doctor-patient relationship or whether the amount of marijuana possessed was reasonable. Finally, if there are no material questions of fact and the defendant has not shown the elements listed in subsection (a), the defendant is not entitled to dismissal of the charges and the defendant cannot assert § 8(a) as a defense at trial. A trial judge must preclude from the jury's consideration evidence that is legally insufficient to support the § 8 defense because, in this instance, no reasonable juror could conclude that the defendant satisfied the elements of the defense.[64] If the defendant believes that the circuit court erroneously denied the motion, the defendant's remedy is to apply for interlocutory leave to appeal.

In *Kolanek*, no reasonable jury could have concluded that Kolanek satisfied the elements of the § 8 affirmative defense. As explained, Kolanek did not meet the requirements of § 8(a)(1) because he did not obtain a physician's statement after enactment of the MMMA and before the commission of his offense. Thus, Kolanek failed to present evidence supporting the affirmative defense under § 8. Because no reasonable jury could have concluded that Kolanek is entitled to the defense as a matter of law, he is precluded from presenting evidence of this defense at trial. To allow

_____

33, 66; 809 NW2d 176 (2011) (M. J. KELLY, J., concurring) (reasoning that determination by a jury is appropriate if questions of fact exist regarding a defendant's § 8 defense).

[64] See *Reed*, 294 Mich App at 86 (concluding that "[no] reasonable jury could find that defendant is entitled to the § 8 defense, and thus defendant is barred from asserting it at trial"); *Anderson*, 293 Mich App at 65 (M. J. KELLY, J., concurring) ("[A] trial court may bar a defendant from presenting evidence and arguing a § 8 defense at trial when, given the undisputed evidence, no reasonable jury could find that the elements of the § 8 defense had been met.").

submission of the defense to the jury when the defense fails as a matter of law would unnecessarily burden the jury and the circuit court with irrelevant testimony.[65] Accordingly, the Court of Appeals erred by permitting Kolanek a "'second bite at the apple'"[66] by allowing him to present his defense to the jury despite its conclusion that he failed to present sufficient evidence that his use of marijuana was for medical purposes under § 8. We therefore reverse this portion of the Court of Appeals' judgment.

In *King*, neither the district court nor the circuit court held an evidentiary hearing with regard to King's § 8 motion to dismiss. Because § 8 expressly requires an evidentiary hearing to obtain dismissal of criminal charges, we remand to the circuit court for it to hold such a hearing.

## IV. CONCLUSION

The plain language of the MMMA does not require that a defendant asserting the affirmative defense under § 8 also meet the requirements of § 4. Additionally, to meet the requirements of § 8(a)(1), a defendant must establish that the physician's statement occurred after the enactment of the MMMA and before the commission of the offense. If a circuit court denies a defendant's motion to dismiss under § 8 and there are no material questions of fact, then the defendant may not reassert the defense at trial; rather, the appropriate remedy is to apply for interlocutory leave to appeal. Thus, we reverse the

---

[65] See *Bailey*, 444 US at 416 ("If . . . an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense.").

[66] *People v D'Angelo*, 401 Mich 167, 178; 257 NW2d 655 (1977).

30

Court of Appeals' judgment in *King* and remand for an evidentiary hearing so that King may raise the affirmative defense under § 8.  We affirm the Court of Appeals' judgment in *Kolanek*, with the exception of the portion directing the circuit court to allow Kolanek to reassert the § 8 affirmative defense at trial.

Mary Beth Kelly
Robert P. Young, Jr.
Michael F. Cavanagh
Marilyn Kelly
Stephen J. Markman
Diane M. Hathaway
Brian K. Zahra

APPENDIX

In light of the need for guidance regarding the medical use of marijuana in Michigan, the following is designed to summarize our numerous holdings in these cases.

1. Section 4 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26424, provides qualified registered patients broad immunity from "arrest, prosecution, or penalty in any manner" and protection from the denial of "any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for the medical use of marihuana in accordance with this act . . . ."

2. To be entitled to the broad immunity of § 4, a qualifying patient with a registry identification card who has not specified a primary caregiver must possess no more than 2.5 ounces of usable marijuana and 12 marijuana plants, which must be kept in "an enclosed, locked facility."

3. Registered patients who do not qualify for immunity under § 4, as well as unregistered persons, are entitled to assert in a criminal prosecution the affirmative defense of medical use of marijuana under § 8 of the MMMA, MCL 333.26428.

4. Section 8 of the MMMA provides a limited protection for the use of medical marijuana in criminal prosecutions, which requires dismissal of the charges if all the elements of the defense are established.

5. A defendant need not establish the elements of § 4 to have a valid affirmative defense under § 8.

6. A defendant who moves for the dismissal of criminal charges under § 8 must raise the defense in a pretrial motion to dismiss and for an evidentiary hearing.

7. A defendant is entitled to the dismissal of criminal charges under § 8 if, at the evidentiary hearing, the defendant establishes all the elements of the § 8 affirmative defense, which are (1) "[a] physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana," (2) the defendant did not possess an amount of marijuana that was more than "reasonably necessary for this purpose," and (3) the defendant's use was "to treat or alleviate the patient's serious or debilitating medical condition or symptoms . . . ." As long as a defendant can establish these elements, no question of fact exists regarding these elements, and none of the circumstances in § 7(b), MCL 333.26427(b), exists, then the defendant is entitled to dismissal of the criminal charges.

8. With regard to the physician's statement required by § 8(a)(1), the defendant must have obtained the physician's statement after enactment of the MMMA, but before the commission of the offense.

9. If a defendant moves for dismissal of criminal charges under § 8 and at the evidentiary hearing establishes prima facie evidence of all the elements of the § 8 affirmative defense, but material questions of fact exist, then dismissal of the charges is not appropriate and the defense must be submitted to the jury.

10. If a defendant moves for dismissal of criminal charges under § 8 and at the evidentiary hearing fails to present evidence from which a reasonable jury could conclude that the defendant satisfied the elements of the § 8 affirmative defense, and there are no questions of fact, then the circuit court must deny the motion to dismiss the charges. In

33

this instance, the defendant is not permitted to present the § 8 defense to the jury. Rather, the defendant's remedy is to apply for interlocutory leave to appeal.