# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

ALENNA MARIE ROCAFORT,

Defendant-Appellant.

UNPUBLISHED
January 7, 2016

No. 321804
Kent Circuit Court
LC No. 13-000391-FH

Before: MARKEY, P.J., and MURPHY and STEPHENS, JJ.

PER CURIAM.

Defendant appeals by right her jury trial convictions of unlawful manufacture of marijuana, MCL 333.7401(2)(d)(*iii*) (less than five kilograms or fewer than 20 plants), unlawful possession of marijuana with intent to deliver, MCL 333.7401(2)(d)(*iii*), and knowingly keeping or maintaining a drug house, MCL 333.7405(d). Defendant was sentenced to 24 months' probation. We affirm.

This case concerns the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.*, and defendant's manufacturing of marijuana in a house located in Kentwood, Michigan. There is no dispute that on September 19, 2012, defendant was a registered patient and caregiver under the MMMA and that she had five registered patients and provided four of those patients with marijuana. There is also no dispute that on that date defendant had 34 marijuana plants growing in an unoccupied house located next to the house in which she lived. Defendant used the unoccupied house solely to produce marijuana.

On September 15, 2012, defendant harvested marijuana from her plants and began the process of drying it. She intended to produce hash oil from this harvested marijuana. On September 19, 2012, she placed the harvested marijuana into canisters as part of the drying process. When she returned home from work that afternoon, she saw police officers at the unoccupied house. She approached the officers and told them she was a registered patient and caregiver under the MMMA. She told them the house was hers and that she used it only for producing marijuana. Police nevertheless seized approximately 5.8 pounds of marijuana that defendant had put inside the canisters to dry. Before trial, defendant moved the trial court to dismiss her charges pursuant to § 4 of the MMMA, MCL 333.26424(b). The trial court dismissed her motion because it found that the marijuana seized from the house was above the amount of usable marijuana permitted under § 4. Defendant also moved the trial court to permit

-1-

her to assert a defense pursuant to § 8 of the MMMA, MCL 333.26428(a). The trial court granted the motion. Defendant was convicted as previously stated.

Defendant first argues that the trial court erred in finding that the seized marijuana was dried, and thus usable, in denying her motion to dismiss under § 4. Manufacturing marijuana or possessing marijuana with intent to deliver it "where the amount is less than 5 kilograms or fewer than 20 plants" is a felony. MCL 333.7401(2)(d)(*iii*). And, a person "[s]hall not knowingly keep or maintain a . . . dwelling . . . that is used for keeping or selling controlled substances . . . ." MCL 333.7405(d). But "the MMMA allows the medical use of marijuana by a limited class of individuals." *People v Carruthers*, 301 Mich App 590, 597; 837 NW2d 16 (2013). Section 4 of the MMMA "grants broad immunity from criminal prosecution and other penalties to qualified patients and caregivers . . . ." *Id.* at 597-598. Section 4 at the time of the charged offenses stated in relevant part as follows:

> (b) A primary caregiver who has been issued and possesses a registry identification card shall not be subject to arrest, prosecution, or penalty in any manner, or denied any right or privilege, including but not limited to civil penalty or disciplinary action by a business or occupational or professional licensing board or bureau, for assisting a qualifying patient to whom he or she is connected through the department's registration process with the medical use of marihuana in accordance with this act[1], provided that the primary caregiver possesses an amount of marihuana that does not exceed:
>
> (1) 2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the department's registration process; and
>
> (2) for each registered qualifying patient who has specified that the primary caregiver will be allowed under state law to cultivate marihuana for the qualifying patient, 12 marihuana plants kept in an enclosed, locked facility; and
>
> (3) any incidental amount of seeds, stalks, and unusable roots. [MCL 333.26424.]

Thus, for a caregiver to be immune from prosecution pursuant to § 4, the caregiver cannot possess an amount of marijuana that exceeds "2.5 ounces of usable marihuana for each qualifying patient to whom he or she is connected through the department's registration process . . . ." MCL 333.26424(b)(1). The MMMA defines usable marijuana as "the dried leaves and flowers of the marihuana plant, and any mixture or preparation thereof, but does not include the seeds, stalks, and roots of the plant." MCL 333.26423(k).[2] This Court has emphasized that

---

[1] 2012 PA 512, effective April 1, 2013, added to the statute at this point: "The privilege from arrest under this subsection applies only if the primary caregiver presents both his or her registry identification card and a valid driver license or government-issued identification card that bears a photographic image of the primary caregiver." The amendment also deleted "provided that" and started the final sentence of subsection b with: "This subsection applies only if . . . ."

[2] Before the 2012 amendment, this subsection was designated MCL 333.26423(j).

usable marijuana "includes *only* 'the dried leaves and flowers of the marihuana plant . . . ." *Carruthers*, 301 Mich App at 601.

There is no dispute that defendant was a caregiver under the MMMA and that she was registered to provide marijuana to five patients. The trial court stated that the sole issue with regard to defendant's § 4 motion was the fact that she had 5.6 pounds of harvested marijuana which, if that marijuana were usable, exceeded the amount of usable marijuana defendant was allowed to have pursuant to subsection (b)(1). Christopher Conrad, an expert in cannabis cultivation, testified at the hearing on defendant's § 4 motion that it usually takes 7 to 10 days to dry marijuana after harvesting it. But he also testified that even dried marijuana consists of approximately 10 percent moisture. Conrad testified that in his opinion, the marijuana seized from defendant was not dried, but that it would have been "pretty dry" and that "[t]he bulk of its moisture would be gone at that point [September 19]" because most of the drying happens at the beginning of the process.

The trial court stated that the amount of marijuana seized from defendant exceeded the 15 ounces defendant was permitted to have under § 4. The trial court further stated that dried marijuana pursuant to the MMMA could not possibly refer only to completely dried marijuana because, as Conrad testified, even dried marijuana consists of approximately 10 percent moisture. The trial court also noted that Conrad testified that marijuana loses most of its moisture in the beginning of the drying process; therefore, after four days of drying, most of the moisture is gone. The trial court concluded that, although the seized marijuana may not have been dried to the ideal extent, it was "largely dried" and, therefore, denied defendant's motion.

This Court is not "left with a definite and firm conviction" that the trial court made a mistake in finding that defendant's seized marijuana was dried. *People v Rhodes*, 495 Mich 938, 938; 843 NW2d 214 (2014). Although testimony indicated that the process for drying marijuana took more than four days, there was also testimony that most of the drying took place in the beginning of the drying process. There was no dispute that the marijuana had been drying for four days when it was seized. In sum, the trial court did not clearly err in finding that the seized marijuana was dried, and thus usable under the MMMA. *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012). We conclude the trial court did not abuse its discretion by denying defendant's motion because the result was within the range of principled outcomes. *Id.*; *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011).

Defendant next argues that the trial court erred by instructing the jury that she had the burden of proving the elements of her § 8 defense by a preponderance of the evidence. Defendant argues that the prosecution had the burden of proving beyond a reasonable doubt that defendant failed to establish the elements of her Section 8 defense. We disagree. The trial court "must clearly present the case and applicable law to the jury[,]" and include "all elements of the charged offenses and any material issues, defenses, and theories if supported by the evidence." *People v McGhee*, 268 Mich App 600, 606; 709 NW2d 595 (2005).

Section 8 "provides an affirmative defense to charges involving marijuana for its medical use . . . ." *People v Kolanek*, 491 Mich 382, 396; 817 NW2d 528 (2012). It provided at the time of the offenses in relevant part as follows:

(a) Except as provided in section 7 [listing certain activities not permitted under the MMMA], a patient and a patient's primary caregiver, if any, may assert the medical purpose for using marihuana as a defense to any prosecution involving marihuana, and this defense shall be presumed valid where the evidence shows that:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition;

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428.]

Defendant argues that the prosecution had the burden to disprove the elements of her Section 8 defense beyond a reasonable doubt because the statute states that the defense "shall be presumed valid" if the elements are met. MCL 333.26428(a). Our Supreme Court held to the contrary that this provision means that the burden of proof rests with the defendant. *Kolanek*, 491 Mich at 410. Specifically, our Supreme Court analyzed subsections (a) and (b) of MCL 333.26428 as follows:

Section 8(a) provides that a patient or person may assert this defense in "any prosecution involving marihuana" and that the defense "shall be presumed valid" if its elements can be established. Section 8(b) provides that a person "*may* assert [this defense] in a motion to dismiss, and the charges *shall be dismissed following an evidentiary hearing* where the person shows the elements listed in subsection (a)." This scheme makes clear that *the burden of proof rests with the defendant . . . .* [*Kolanek*, 491 Mich at 410-411 (last emphasis added).]

Furthermore, placing the burden on the defendant to prove an affirmative defense by preponderance of the evidence is in accord with due process because none of the elements of defendant's § 8 defense required her to disprove any of the elements of the charged offenses. *People v Pegenau*, 447 Mich 278, 289; 523 NW2d 325 (1994).

Here, the trial court instructed the jury that for defendant to satisfy her burden under § 8, "the evidence must persuade you that it is more likely than not" that all three of the § 8 elements were true. Thus, the trial court instructed the jury that defendant had to prove the elements of her § 8 defense by a preponderance of the evidence. See *People v Grant*, 470 Mich 477, 486; 684 NW2d 686 (2004) (equating the "preponderance of the evidence" standard with "more likely than not"). The trial court correctly instructed the jury with regard to the defendant's burden of proof concerning her § 8 defense. *Kolanek*, 491 Mich at 410-412; *Pegenau*, 447 Mich at 289.

Finally, defendant argues that the prosecution committed misconduct when during its closing argument, it told the jury that defendant possessed an unreasonable amount of marijuana because she possessed an amount of marijuana that exceeded the amount permitted under § 4 of the MMMA. We review claims of prosecutorial misconduct to determine whether a defendant was denied a fair and impartial trial. *People v Dobek*, 274 Mich App 58, 63; 732 NW2d 546 (2007). "Issues of prosecutorial misconduct are decided case by case, and this Court must examine the entire record and evaluate a prosecutor's remarks in context." *Id.* at 64. In general, prosecutors are accorded wide latitude in their conduct and arguments. *People v Bahoda*, 448 Mich 261, 282; 531 NW2d 659 (1995). "Although a prosecutor may not argue facts not in evidence or mischaracterize the evidence presented, the prosecutor may argue reasonable inferences from the evidence." *People v Watson*, 245 Mich App 572, 588; 629 NW2d 411 (2001). While a prosecutor's uncorrected misstatement of the law may deprive a defendant of a fair trial, the error may be cured if the jury is correctly instructed on the law. *People v Grayer*, 252 Mich App 349, 357; 651 NW2d 818 (2002). This is so because "[j]urors are presumed to follow their instructions, and instructions are presumed to cure most errors." *People v Abraham*, 256 Mich App 265, 279; 662 NW2d 836 (2003).

In this case, the prosecutor first referred to the requirements of § 4 in its closing argument by telling the jury that "[i]f two-and-a-half ounces per person is the standard, okay—that's what you've heard now from her patients even; although, Mr. Jones,[3] as carefully as he reads things, thought it was two—the defendant, she's not even close." In making this statement, the prosecution was apparently referring to the testimony of another one of defendant's patients that he believed the law prohibited him from carrying more than 2.5 ounces of marijuana at one time, and to Jones's testimony that he believed that the law prohibited him from carrying more than two ounces of marijuana at one time. Because the witnesses were referring to what they believed the MMMA required with regard to the maximum amount of marijuana they could have, it is evident that the prosecution's statement referred to the requirement of § 4 that a patient is immune from prosecution as long as, among other things, that patient does not possess more than 2.5 ounces of usable marijuana. MCL 333.26424(a).

The prosecution next argued before the jury as follows:

We're not talking, again, about a few grams, an ounce or two, okay? Ladies and gentlemen, this is about 370 grams of marijuana on this side of the table (indicating). Two-and-a-half ounces per person times five, okay? Defendant,

---

[3] The prosecutor was referencing one of defendant's registered patients.

[and four of her patients]. Twelve-and-a-half times five[4] is about 354 grams. So this is actually giving her even a little bit more benefit of the doubt by about 16, 17 grams. That's what the statute says.

In this instance, the prosecution stated that "the statute says" that defendant could possess 2.5 ounces of marijuana for each of her four patients plus herself, thus referring to immunity for caregivers under § 4 who possess not more than 2.5 ounces of usable marijuana for each of their patients and themselves. MCL 333.26424(b)(1). Additionally, the prosecution indicated to the jury a display of marijuana comparing the total amount seized from defendant with the amount permitted under § 4. Therefore it is clear that the prosecution argued before the jury that defendant possessed an unreasonable amount of marijuana under § 8 because she exceeded the amount of marijuana specified for immunity under § 4. This was a misrepresentation of the law as interpreted by our Supreme Court. *Kolanek*, 491 Mich at 401-403.

"Sections 4 and 8 provide separate and distinct protections and require different showings," so defendant did not need to satisfy the requirements of § 4 to establish a defense under § 8. *Kolanek*, 491 Mich at 401. Consequently, "[a]ny defendant, regardless of registration status, who possesses more than 2.5 ounces of usable marijuana or 12 plants not kept in an enclosed, locked facility may satisfy the affirmative defenses under § 8." *Id.* at 403.

In other words, possessing no more than 2.5 ounces of marijuana per patient is a requirement for immunity for a caregiver under § 4. MCL 333.26424(b)(1). But the affirmative defense under § 8 only required defendant to show—along with the other requirements of § 8(a)—that she and her patients "were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms . . . ." MCL 333.26428(a)(2); *Kolanek*, 491 Mich at 403, 408. Because defendant was not required to satisfy the elements of § 4 as part of her § 8 defense, the prosecution misrepresented the law. *Kolanek*, 491 Mich at 401-403.

Nonetheless, after defendant objected to the prosecution's misstatement of the law, the trial court correctly instructed the jury that "[t]his case is premised on Section 8 which talks about what's reasonably necessary for maintaining an adequate supply, and that's what the dispute's about." Defendant argues that the trial court erred by misleading the jury into believing that § 4 was relevant by stating that "what [the prosecution] is saying is the smaller amount he has on the far side of the table there would be absolutely exempt from prosecution under one section of the Act, which doesn't happen to be the section that's the basis of the defense at this trial." But the trial court clearly did not state or imply that § 4 was relevant to a determination of the issues. Quite the contrary, the trial court instructed the jury that § 4 immunity was not "the section that's the basis of the defense at this trial[,]" and clarified that when the prosecution was referring to the "smaller amount" of marijuana, it was referring to § 4 immunity rather than to a

---

[4] Clearly, the prosecution intended to multiply 12.5 by the number of grams in an ounce, not by five. There are approximately 28.3 grams in an ounce, and 12.5 multiplied by 28.3 equals 353.75.

reasonable amount under § 8. The trial court's instruction was correct because it emphasized the fact that the requirements of § 4 were legally distinct from the requirements of § 8, and that § 8 was at issue rather than § 4. *Kolanek*, 491 Mich at 401-403. Therefore, the trial court did not err in so instructing the jury. *Id.* Indeed, the trial court's instructions to the jury cured the prosecution's error. *Abraham*, 256 Mich App at 279.

We affirm.

/s/ Jane E. Markey
/s/ William B. Murphy