# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JOHNNIE VERNON RANDALL,

Defendant-Appellant.

UNPUBLISHED
January 13, 2015

No. 318740
Tuscola Circuit Court
LC No. 12-012613-FH

Before: DONOFRIO, P.J., and BORRELLO and STEPHENS, JJ.

PER CURIAM.

Defendant appeals as of right from his convictions following a bench trial of manufacturing more than 20 but less than 200 marijuana plants, MCL 333.7401(2)(d)(*ii*), and possession of marijuana, MCL 333.7403(2)(d).[1] Defendant was sentenced to 180 days, but his incarceration was stayed pending appeal. At issue is a ruling of the trial court denying his motion to dismiss under § 4 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq*. Because defendant fell under the protections of § 4, we vacate defendant's convictions and reverse the trial court's denial of defendant's motion to dismiss.

Acting on a tip, Tuscola County Deputy Sheriff Ryan Robinson went to a building in Millington, Michigan that was suspected of housing a marijuana grow operation. The officer testified that he "could smell marijuana coming from the building" and observed marijuana plants through a window. He noted a black Silverado parked in the driveway and initiated a traffic stop when it left the scene. Defendant was the driver and claimed ownership of all the marijuana in the vehicle, which totaled 7.58 ounces.

Subsequently, pursuant to a search warrant, police officers entered the Millington building and found 22 marijuana plants growing in hydroponic systems, another 23 plants in a second office, and 20 plants in a blue tub in a Jeep, for a total of 68 plants. Sheriff Deputy Justin Nitz testified that other marijuana was found in "[d]rying states," which he described as having "been removed from the root system." He testified that this marijuana was no longer being

---

[1] A third charge of possession with the intent to deliver marijuana, MCL 333.7401(2)(d)(*iii*), was dismissed at sentencing.

-1-

watered or nourished," but "being dried . . . to get where they could be sold, basically." Nitz gathered all the "plant material" (i.e., not the plants with roots, just the materials that had been harvested from the plants), which totaled 92.8 ounces.

Nitz testified that his report did not list the "dryness" of the recovered marijuana material. He admitted, however, the marijuana plants and other marijuana material taken from the building were wet and green when seized. Nitz generally admitted at trial that some evidence from the building "that was not fit to be put in paper bags or sealed up was allowed to dry. And, after the drying period it was then placed in evidence and sealed at that time." Nitz testified that the material from the building was noticeably not as dry as the marijuana material that was collected from the traffic stop. Nitz also testified that a lot of the collected marijuana materials from the building contained leaves, stems, and even stalks.

Defendant moved under § 4 of the MMMA to dismiss the charges filed. At an evidentiary hearing on his motion, defendant testified that at the time of the raid, he was a designated caregiver for five patients and also was a patient himself. The court found that on the date of the building search in issue, defendant was indeed "the caregiver to five patients plus he had a patient card himself, making him eligible to possess quantities for six individuals under the [MMMA]." Consequently, the MMMA authorized defendant to possess 15 ounces of usable marijuana and 72 marijuana plants. MCL 333.26424(a), (b)(1)-(2).

The court found that defendant possessed 68 plants and, thus, was "in compliance as far as plants go." However, the court found that "usable marijuana" "doesn't necessarily have to be dry and ready to smoke" and, thus, the 92.8 ounces of seized marijuana, not even considering the amount seized from the traffic stop, was in excess of the 15 total ounces defendant was permitted to possess under ¶ 4. Further, the court found that although the MMMA allows for the possession of an "incidental amount" of stalks, the material found was not "an incidental amount." Therefore, the court denied defendant's motion to dismiss under § 4. Defendant challenges this decision on appeal.

A trial court's decision whether to grant a motion to dismiss is reviewed for an abuse of discretion. *People v Herndon*, 246 Mich App 371, 389; 633 NW2d 376 (2001). A trial court necessarily abuses its discretion when it makes an error of law. *People v Waterstone*, 296 Mich App 121, 131-132; 818 NW2d 432 (2012). To the extent that resolution of this appeal involves statutory interpretation of the MMMA, our review is de novo. *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012). Finally, we review the court's factual findings for clear error. *People v Williams*, 475 Mich 245, 250; 716 NW2d 208 (2006).

The MMMA resulted from the passage of a citizens' initiative and thus interpretation of the MMMA is guided by the established principles concerning the interpretation of voter initiatives and the canons of statutory interpretation. *People v Carruthers*, 301 Mich App 590, 596; 837 NW2d 16 (2013). This Court seeks to "ascertain and give effect to the intent of the electorate, rather than the Legislature, as reflected in the language of the law itself. We must give the words of the MMMA their ordinary and plain meaning as would have been understood by the electorate." *Kolanek*, 491 Mich at 397. The Court presumes "the meaning as plainly expressed in the statute is what was intended, and . . . avoid[s] a construction that would render

any part of the statute surplusage or nugatory." *Carruthers*, 301 Mich App at 597. Statutes relating to the same subject should be harmonized. *Id.*

Section 4 of the MMMA provides, that, as a qualifying patient, one can safely possess up to 2.5 ounces of "usable marihuana" and up to "12 marihuana plants." MCL 333.26424(a). With respect to being a primary caregiver, one can safely possess an amount of marijuana that does not exceed 2.5 ounces of "usable marihuana" for each qualifying patient and "12 marihuana plants" for each qualifying patient. MCL 333.26424(b). Thus, defendant, as a registered caregiver for five patients and being a patient himself, could avail himself of the § 4 defense if he possessed up to 15 ounces of usable marijuana and up to 72 marijuana plants.

The MMMA takes its definition of "marihuana" from the public health code, 1978 PA 368, MCL 333.7106, which provides as follows:

> "Marihuana" means all parts of the plant Canabis sativa L., growing or not; the seeds thereof; the resin extracted from any part of the plant; and every compound, manufacture, salt, derivative, mixture, or preparation of the plant or its seeds or resin. It does not include the mature stalks of the plant . . . . [MCL 333.7106(3).]

Separately defined in the MMMA, "'[u]sable marihuana' means the *dried* leaves and flowers of the marihuana plant, and any mixture or preparation thereof, but does not include the seeds, stalks, and roots of the plant." MCL 333.26423(k) (emphasis added). Thus "usable marihuana" is narrower in scope than the general definition of "marihuana." *Carruthers*, 301 Mich App at 599. This Court has explained that usable marijuana is "*only* 'the dried leaves and flowers of the marihuana plant, and any mixture or preparation *thereof.*'" *Id.* at 601, quoting MCL 333.26423(k) (emphasis added by *Carruthers*). Defendant does not contest that the marijuana found during the traffic stop matches this description and is usable marijuana under the act. This amount totaled approximately 7.5 ounces.

However, with respect to the seized plant material from the building, Nitz consistently testified that the marijuana was "green," "wet," "drying," or in the "drying states." He testified that, from his understanding, "usable marijuana could be also completely wet marijuana." While wet marijuana may, indeed, be "usable" in some circumstances, it is not "usable" for purposes of the MMMA. In order to be usable under the MMMA, the marijuana must be dried. MCL 333.26423(k). "Dried" is the past participle or past tense of the verb "dry." *Random House Webster's College Dictionary* (1997). A past participle is a "nonfinite verb form ending usu. in – *ed*" which "may also function adjectivally." Garner, *Garner's Modern American Usage* (3rd ed) (New York: Oxford University Press, 2009), p 909. As a past participle, it has a perfective aspect, which is a "verb aspect that expresses action as complete." *Id.* at 883, 909. Likewise, the past tense signals "an action or even a state that occurred at some previous time." *Id.* at 920. Additionally, the past-perfect tense denotes "an act, state, or condition [that] was completed before another specified past time or past action." *Id.* Therefore, the term "dried" clearly indicates a *completed* condition.

This is in contrast to present participles, which are verb forms "ending in –*ing* and used in verb phrases to signal the progressive aspect." *Id.* at 909. Present participles may also be

-3-

adjectival. *Id*. The progressive aspect shows "that an action or state—past, present, or future—was, is, or will be unfinished at the time referred to." *Id*. at 883. Nitz clearly used the progressive aspect when he described the marijuana material as "drying" rather than "dried." Indeed, Nitz testified the marijuana material from the building continued to dry for at least five days after it was seized.

Therefore, because the material seized in the building was not "dried," it was not usable marijuana under the MMMA.[2] Accordingly, the trial court erred as a matter of law when it considered the material seized from the building as being usable marijuana. Thus, the only usable marijuana that defendant possessed was from the 7.58 ounces from the traffic stop, which is less than the 15 ounces he was permitted to possess and still fall under the protections of § 4.

The trial court also refused to consider the amount of seized stalks to be "incidental." See MCL 333.26424(a), (b)(3) (allowing registered patients and caregivers to possess an "incidental amount of seeds, stalks, and unusable roots"). "Incidental" is an adjective meaning "1. happening or likely to happen in an unplanned or subordinate conjunction with something else. 2. incurred casually and in addition to the regular or main amount." *Random House Webster's College Dictionary* (1997). Alternatively, "incidental" is "[s]ubordinate to something of greater importance; having a minor role." *Black's Law Dictionary* (10th ed).

Defendant testified that he had been trimming the plants before the building was searched and that some of the material was discarded into a garbage bag. The evidence clearly showed that the marijuana leaves and buds had to be trimmed from the plants and dried before it was rendered usable. Both defendant's testimony and observations by the officers of the marijuana operation in the building showed that the marijuana plants had been trimmed and leaves were drying. It is also clear that trimming and drying the material, as it was discovered in the building, is "subordinate" to producing dried, usable marijuana. Therefore, when considering that defendant was tending to 68 plants, we conclude that the trial court clearly erred in determining that the amount of stalks included in the 92.8 ounces of plant material seized from the building was not "incidental." The trial court appears to have conflated the term "incidental" with the term "negligible." This is incorrect. Even when considering the 92.8 ounces seized in its entirety (even though the stalks are only a portion thereof), that equates to less than 2.0 ounces per plant.[3] This small amount strikes us as being "likely to happen in an unplanned or

---

[2] Additionally, definitions of both "marihuana" and "usable marihuana" expressly exclude the stalks of the plant. MCL 333.26423(k); MCL 333.7106(3). Usable marijuana only includes the dried leaves and flowers—stems are not included in this definition. However, Nitz testified that the final weight of plant material included both stems and stalks. This fact was confirmed by the trial court at the evidentiary hearing. Thus, not only did the court err by including "drying" marijuana as "usable," it also erred in including stems as "usable" marijuana and stalks as marijuana.

[3] Even though defendant had 68 plants, he testified that 20 of those he plants he had left to die because they were infested with mites. Thus, even when considering that he was actively tending to 48 plants, that correlates to 1.9 ounces per plant.

-4-

subordinate conjunction with" the process of cultivating medical marijuana. Therefore, the trial court clearly erred in finding that defendant did not meet the requirements of § 4 by possessing more than an "incidental amount of seeds, stalks, and unusable roots."

Further, even though some, and perhaps even most, of the marijuana plant material seized from the building consisted of "wet" stems and leaves, thereby not qualifying as "seeds, stalks, and unusable roots" and not qualifying as "usable" marijuana, the material was still allowed under the MMMA. The act expressly allows under § 4 that "*any marihuana . . .* used in connection with the medical use of marihuana, as allowed under this act, . . . shall not be seized or forfeited." MCL 333.26424(h) (emphasis added). This section broadly allows the possession of marijuana that is connected to medical use. A "connection" is "the act or state of connecting" or the "state of being connected." *Random House Webster's College Dictionary* (1997). "Connected" means "united, joined, or linked" and "joined together in sequence; linked coherently." *Id*. Finally, "connect" means "to join, link, or fasten together; unite" or "to cause to be associated in a relationship." *Id*. The testimony and evidence shows that the marijuana leaves and stems were "in connection" with defendant's production of usable marijuana under the act. As discussed above, the drying plant material is a subordinate process between the licit cultivation of marijuana plants and usable marijuana. Therefore, defendant was permitted to possess the plant material, and it should not have been seized. MCL 333.26424(h).

We vacate defendant's convictions and reverse the trial court's denial of his motion to dismiss.

/s/ Pat M. Donofrio
/s/ Stephen L. Borrello
/s/ Cynthia Diane Stephens

-5-