*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ADAM TRAVIS TASSELMYER,

        Defendant-Appellant.

UNPUBLISHED
April 1, 2021

No. 353404
Washtenaw Circuit Court
LC No. 19-000219-FH

Before: STEPHENS, P.J., and SAWYER and BECKERING, JJ.

PER CURIAM.

In this interlocutory appeal, defendant appeals by leave granted the trial court's order denying his motion to dismiss.[1] In our order, we limited the issue on appeal to whether defendant was immune from prosecution under the Medical Marihuana Facilities Licensing Act (the MMFLA), MCL 333.27101 *et seq.* For the reasons discussed in this opinion, we vacate the order denying defendant's motion to dismiss and remand the case to the trial court.

## I. BACKGROUND

This case arises from the execution of a search warrant at defendant's apartment located above his business, Herbal Solutions, Inc., in Ypsilanti, Michigan. Additionally, police also searched the business and his girlfriend's apartment.[2] Police seized eight one-gallon sized Ziplock bags containing eight different strains of marijuana inside defendant's apartment. They also noted the presence of THC waxes, oils, and organic rubs. At all times relevant to this appeal, defendant was an applicant for a provisioning center license under the MMFLA. His initial application was denied but it is undisputed that he had a temporary license while he exhausted his appeals from that denial. Defendant moved for dismissal of the charges filed against him on the basis that he was immune from prosecution under the MMFLA. The trial court denied defendant's motion to

---

[1] *People v Tasselmyer*, unpublished order of the Court of Appeals, entered June 2, 2020 (Docket No. 353404).

[2] Defendant's girlfriend served as the office manager of Herbal Solutions.

dismiss but granted his motion to stay proceedings to appeal in this Court. We granted leave to appeal.

## II. MOTION TO DISMISS

Defendant argues that, pursuant to the MMFLA, he was absolutely immune from prosecution for possessing large quantities of marijuana in his apartment. We disagree.

## A. STANDARD OF REVIEW

We review "a trial court's decision on a motion to dismiss charges against a defendant for an abuse of discretion. A trial court may be said to have abused its discretion only when its decision falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012) (citation omitted). We review de novo issues of statutory interpretation and a trial court's determination of immunity. *People v Hartwick*, 498 Mich 192, 213 n 38; 870 NW2d 37 (2015); *People v Babcock*, 469 Mich 247, 253; 666 NW2d 231 (2003). We review the trial court's findings of fact related to the grant of immunity for clear error.[3] *Hartwick*, 498 Mich at 201.

## B. ANALYSIS

The Michigan Medical Marihuana Act (the MMMA), MCL 333.26421 *et seq.*, "was proposed in a citizen's initiative petition, was elector-approved in November 2008, and became effective December 4, 2008." *People v Kolanek*, 491 Mich 382, 393; 817 NW2d 528 (2012). Its purpose was "to allow a limited class of individuals the medical use of marijuana, and the act declares this purpose to be an effort for the health and welfare of [Michigan] citizens." *Id.* at 393-394 (quotation marks and citation omitted; alteration in original). To achieve this purpose, "the MMMA defines the parameters of legal medical-marijuana use, promulgates a scheme for regulating registered patient use and administering the act, and provides for an affirmative defense, as well as penalties for violating the MMMA." *Id.* at 394. The MMMA did not, however, "create a general right for individuals to use and possess marijuana in Michigan." *Id.* Consequently, the "[p]ossession, manufacture, and delivery of marijuana remain[ed] punishable offenses under Michigan law" even after the MMMA was enacted. *Id.*

In 2016, the Medical Marihuana Facilities Licensing Act, MMFLA, was enacted by the Legislature "to license and regulate medical marihuana growers, processors, provisioning centers, secure transporters, and safety compliance facilities." Preamble to the MMFLA, MCL 333.27101 *et seq.*; see also *Hoover v Mich Dep't of Licensing and Regulatory Affairs*, ___ F Supp ___, ___ (ED Mich 2020); slip op at 2. "The MMFLA provides protections for those granted a license and engaging with activities within the scope of the MMFLA." *Hoover*, ___ F Supp at ___; slip op at 2, citing MCL 333.27201. Under the act, "licensed provisioning centers are authorized to purchase safety-tested marihuana only from licensed growers and processors and are authorized to sell it in

---

[3] "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *People v Johnson*, 466 Mich 491, 497-498; 647 NW2d 480 (2002).

limited quantities to patients and caregivers who are registered under the MMMA." *Id*., citing MCL 333.27504. MCL 333.27201 provides:

(1) Except as otherwise provided in this act, if a person has been granted a state operating license and is operating within the scope of the license, the licensee and its agents are not subject to any of the following for engaging in activities described in subsection (2):

(a) Criminal penalties under state law or local ordinances regulating marihuana.

(b) State or local criminal prosecution for a marihuana-related offense.

(c) State or local civil prosecution for a marihuana-related offense.

(d) Search or inspection, except for an inspection authorized under this act by law enforcement officers, the municipality, or the department.

(e) Seizure of marihuana, real property, personal property, or anything of value based on a marihuana-related offense.

(f) Any sanction, including disciplinary action or denial of a right or privilege, by a business or occupational or professional licensing board or bureau based on a marihuana-related offense.

(2) The following activities are protected under subsection (1) if performed under a state operating license within the scope of that license and in accord with this act, rules, and any ordinance adopted under section 205:

(a) Growing marihuana.

(b) Purchasing, receiving, selling, transporting, or transferring marihuana from or to a licensee, a licensee's agent, a registered qualifying patient, or a registered primary caregiver.

(c) Possessing marihuana.

(d) Possessing or manufacturing marihuana paraphernalia for medical use.

(e) Processing marihuana.

(f) Transporting marihuana.

(g) Testing, transferring, infusing, extracting, altering, or studying marihuana.

(h) Receiving or providing compensation for products or services.

The MMFLA confers authority upon the Michigan Department of Licensing and Regulatory Affairs (LARA) to promulgate rules and regulations to allow for facilities to operate within parameters. See MCL 333.27206. MCL 24.248 authorizes agencies to promulgate emergency rules when required to preserve the public health, safety, and welfare.[4] LARA filed such emergency rules on May 30, 2018, and they were in effect at the time the charges in this case were brought against the defendant. Activities conducted in compliance with those emergency rules were protected from prosecution under MCL 333.27201(2). See MCL 333.27201(2) ("The following activities are protected under subsection (1) if performed under a state operating license within the scope of that license and in accord with this act, rules, and any ordinance adopted under section 205".). The emergency rules required that an applicant for a license include a "description of the type of marihuana facility, anticipated or actual number of employees, projected or actual gross receipts, a business plan, proposed marihuana facility location, and security plan." Emergency Rules, Rule 6(1)(a). The marijuana facility plan had to include a diagram of the "marihuana facility," including its "size and dimensions; specifications; physical address; location of common entryways, doorways, or passageways; means of public entry or exit; limited-access areas within the marihuana facility; and indication of the distinct areas or structures at a same location as provided for in Rule 24." Emergency Rules, Rule 8(2)(b). It was required also to include a "floor plan and layout, including dimensions, maximum storage capabilities, number of rooms, dividing structures, fire walls, and entrances and exits," as well as "means of egress, including, but not limited to, delivery and transfer points." Emergency Rules, Rule 8(2).

Importantly, "[i]n order to ensure the safety, security, and integrity of the operation of marihuana facilities," the marijuana facilities had to "be partitioned from any other marihuana facility, activity, business, or dwelling." Emergency Rules, Rule 21(2)(a). The emergency rules further established how marijuana was to be stored "at a marihuana facility in a secured limited access area or restricted access area." Emergency Rules, Rule 35(1). The marijuana that was stored was to "be clearly marked, labeled, or tagged, if applicable, and enclosed on all sides in secured containers. The secured containers must be latched or locked in a manner to keep all contents secured within." Emergency Rules, Rule 35(2). The MMFLA defines "marihuana facility" as "a location at which a licensee is licensed to operate under this act." MCL 333.27102(l).

---

[4] MCL 24.248(1) provides:

> If an agency finds that preservation of the public health, safety, or welfare requires promulgation of an emergency rule without following the notice and participation procedures required by [MCL 24.241 and MCL 24.242] and states in the rule the agency's reasons for that finding, and the governor concurs in the finding of emergency, the agency may dispense with all or part of the procedures and file in the office of the secretary of state the copies prescribed by [MCL 24.246] endorsed as an emergency rule, to 3 of which copies must be attached the certificates prescribed by [MCL 24.245] and the governor's certificate concurring in the finding of emergency. The emergency rule is effective on filing and remains in effect until a date fixed in the rule or 6 months after the date of its filing, whichever is earlier......

There are no decisions addressing the construction of § 201. However, "[s]tatutory interpretation begins with the plain language of the statute." *O'Leary v O'Leary*, 321 Mich App 647, 652; 909 NW2d 518 (2017). "The Legislature is presumed to have intended the meaning it plainly expressed, and clear statutory language must be enforced as written." *People v Bush (On Remand)*, 315 Mich App 237, 245; 890 NW2d 370 (2016) (quotation marks and citation omitted). As such, § 201 provides that a person who has been granted a license and operated within the scope of such license is not subject to state or local criminal prosecutions or criminal penalties for marijuana-related offenses. Thus, purchasing, receiving, possessing, and selling marijuana are all protected activities under MCL 333.27201(2) if the individual has a license, operates within the scope of that license, and complies with the rules promulgated by LARA.

Although no case has interpreted the immunity provided for in § 201 of the MMFLA, our Supreme Court has offered guidance in the context of the MMMA with regard to § 4 which concerns "primary care givers" and end-users who are "qualifying patients". See *Hartwick*, 498 Mich at 210. "Section 4 grants broad immunity from criminal prosecution and civil penalties to 'qualifying patients' and 'primary caregivers.' " *Id.* Our Supreme Court recognized that:

> [E]ntitlement to immunity under § 4 is a question of law. Immunity is a unique creature in the law and is distinguishable from other traditional criminal defenses. A successful claim of immunity excuses an alleged offender for engaging in otherwise illegal conduct, regardless of the sufficiency of proofs in the underlying case. This is consistent with the way claims of immunity are handled in other areas of law. Moreover, the parties agree that § 4 immunity should be determined as a matter of law. There is no indication that the voters who enacted the MMMA intended to treat § 4 immunity differently than other claims of immunity.
>
> Our decision in [*People v Kolanek*, 491 Mich 382; 817 NW2d 528 (2012),] supports this conclusion. There we explained that § 4 " 'grants qualifying patient[s]' who hold 'registry identification card[s]' broad immunity *from* criminal prosecution, civil penalties, and disciplinary actions." A registered qualifying patient, however, "who do[es] not qualify for immunity under § 4, as well as unregistered persons, are entitled to assert *in* a criminal prosecution the affirmative defense . . . under § 8 . . . ." By contrasting the broad grant of immunity in § 4 "*from* prosecution" with the affirmative defense in § 8 "*in* a criminal prosecution," we implied that the decision regarding entitlement to immunity must be made before trial. By its very nature, immunity must be decided by the trial court as a matter of law, and in pretrial proceedings, in order to establish immunity *from* prosecution.
>
> Deciding these questions of law necessarily involves resolving factual disputes. To determine whether a defendant is entitled to the § 4 grant of immunity, the trial court must make factual determinations, including whether the defendant has a valid registry identification card and whether he or she complied with the volume, storage, and medical use limitations. The expediency of having the trial court resolve factual questions surrounding § 4 underscores the purpose of granting immunity *from* prosecution.

Other matters routinely conducted in pretrial contexts, such as entrapment hearings, call for the trial court to act as both the finder of fact and arbiter of law. Like entrapment, § 4 immunity "is not a defense that negates an essential element of the charged crime. Instead, it presents facts that are collateral to the crime that justify barring the defendant's prosecution." We therefore conclude that the trial court must resolve factual disputes for the purpose of determining § 4 immunity. [*Id.* at 212-214 (citations omitted; ellipses and alterations in original), citing *Kolanek*, 491 Mich at 394-395, 415.]

We find that § 201 of the MMFLA which addresses provisioners, affords compliant license holders the same broad immunity that § 4 grants to "qualifying patients" and "primary caregivers". There is no reason to believe that the Legislature intended a different scope of immunity in § 201 *from* prosecution that was granted under § 4 of the MMMA, because the MMFLA allows a person to bring the medical purpose affirmative defense *in* a criminal prosecution, a defense that is also available under § 8 of the MMMA. See *Hartwick*, 498 Mich at 214. Because the immunities in both the MMFLA and MMMA are similar, we find that whether to grant immunity under § 201 of the MMFLA is a question of law that the trial court must decide prior to trial. See *Hartwick*, 498 Mich at 212-214. Immunity applies if the court determines that a defendant was licensed and acting within the scope of the LARA rules applicable to that license. See MCL 333.27201. Such a determination requires the court to resolve both questions of law and questions of fact.

The trial court's factual findings with respect to a claim of immunity under § 201 of the MMFLA should be reviewed for clear error. *Hartwick*, 498 Mich at 201. A defendant has the burden to establish immunity under § 201 by a preponderance of evidence. See *Hartwick*, 498 Mich at 217. In this case, the trial court denied the defendant's pre-trial request for dismissal. In doing so, the court stated that it was not opining as to whether defendant intended to deliver marijuana outside of the scope of his license. The court made no fact-finding but stated,

> that there is some evidence that [defendant] was acting outside the scope of his license. And that evidence is that marijuana was stored in large quantities in his residence and in a manner different than he stored the general stock and I used that word previously but the stuff that or [sic] marijuana that was closer to being sold than what was found in his apartment.

As noted in *Hartwick*, the trial court was required to make a finding as to whether the defendant met his burden of proof on entitlement to immunity under § 20l. 498 Mich at 203 ("[T]he trial court must ultimately weigh the evidence to determine if the defendant has met the requisite burden of proof as to all elements of § 4 immunity."). The trial court erroneously left the question of immunity for a jury determination.[5] Accordingly, we vacate the order denying defendant's motion to dismiss and remand the case to the trial court.

---

[5] We acknowledge having raised this issue sua sponte when it was not raised by either party below.

Vacated and remanded.  We do not retain jurisdiction.

/s/ Cynthia Diane Stephens
/s/ David H. Sawyer
/s/ Jane M. Beckering